# 21-2632

## United States Court of Appeals
## for the Seventh Circuit



JEFFREY CHAITOFF,

*Plaintiff-Appellant,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT  FOR
THE NORTHERN DISTRICT OF ILLINOIS (Eastern Division)

## BRIEF FOR PLAINTIFF-APPELLANT

ZEMEL LAW, LLC
*Attorney for Plaintiff-Appellant*
660 Broadway
Paterson, New Jersey 07514
(862) 227-3106
*DZ@zemellawllc.com*

*Jeffrey Chaitoff v. Experian Info. Solutions, Inc.*
No. 21-2632

<u>DISCLOSURE STATEMENT</u>

Plaintiff/Appellant Jeffrey Chaitoff states the following pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1:

(1) The full name of every party that the attorney represents in the case:

Jeffrey A. Chaitoff

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Zemel Law LLC

Venis & Copp LLP

(3) If the part, amicus or intervenor is a corporation: N/A

(4) Organizational Victims in Criminal Cases: N/A

(5) Debtor information in a bankruptcy case: N/A

Respectfully submitted,

<u>Daniel Zemel</u>
Daniel Zemel, Esq.
ZEMEL LAW, LLC
660 Broadway
Paterson, New Jersey 07514
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com
Counsel of Record for Plaintiff-Appellan

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF CITATIONS ............................................................................................... ii

JURISDICTIONAL STATEMENT ............................................................................. 1

STATEMENT OF THE ISSUES .................................................................................. 1

STATEMENT OF THE CASE ...................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................... 7

STANDARD .................................................................................................................... 11

ARGUMENT ................................................................................................................... 11

   A.  FCRA BACKGROUND ....................................................................................... 11

   B.  The Trial Court Committed Clear Errors Regarding the Accuracy of the Report ............ 11

   C.  The District Court Erred in Finding Defendant's Policies Reasonable as aMatter of Law ...

       .................................................................................................................................. 23

      1.  Circuit Case Law Holds that Reasonableness is a Question of Fact for the Jury ......... 23

      2.  Application of Circuit Case Law to the Instant Case ...................................................... 29

   D.  The District Court Erred in Considering As True Disputed Facts Submitted by Experian 32

CONCLUSION ................................................................................................................ 35

# TABLE OF CITATIONS

**Cases**

Alexander v. Moore & Assocs., Inc., 553 F. Supp. 948 (D. Haw. 1982) .................................... 13

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........ 33

Bowles v. Quantum Chemical Co., 266 F.3d 622 (7th Cir. 2001) ................................................. 11

Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982) ........................................................................ 27

Chaitoff v. Experian Info. Sols., Inc., 2021 U.S. Dist. LEXIS 90281 (N.D. Ill. May 12, 2021)

........................................................................................................................................... passim

Chuluunbat v. Experian Info. Sols., Inc., 4 F.4th 562 (7th Cir. 2021) ........................................ 14

Cohen Dev. Co. v. JMJ Props., Inc., 317 F.3d 729 (7th Cir. 2003) ............................................ 11

Collins v. Experian Information Solutions, Inc., 775 F.3d 1330 (11th Cir. 2015) ...................... 26

Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010) .................................................... 12, 13

Crump v. Carrington Mortg. Servs., LLC, 2019 U.S. Dist. LEXIS 2292 (N.D. Ill. 2019) ......... 28

Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997) .................................. 12, 23, 27, 31

Denan v. Trans Union, LLC, 959 F.3d 290 (7th Cir. 2020) ......................................................... 12

Dennis v. BEH-1, LLC, 520 F.3d 1066 (9th Cir. 2008) ............................................................... 27

Geoffrion v. Nationstar Mortg. LLC, 182 F. Supp. 3d 648 (E.D. Tex. 2016) ............................. 11

Grigoryan v. Experian Info. Solutions, Inc., 84 F. Supp. 3d 1044 (C.D. Cal. 2014) .................. 28

Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994) ................................................... passim

Koropoulos v. Credit Bureau, Inc., 236 U.S. App. D.C. 136, 734 F.2d 37 (1984) ............... passim

Levine v. JPMorgan Chase & Co., 2013 U.S. Dist. LEXIS 152223 (E.D. Wis. Oct. 22, 2013) .. 20

Losch v. Nationstar Mortg. LLC, 995 F.3d 937 (11th Cir. 2021) ............................. 16, 23, 25, 26

Mileva v. Trans Union, LLC, 2021 U.S. Dist. LEXIS 59503 (N.D. Ill. Mar. 29, 2021) ....... *passim*

Milwaukee Metro Sewerage Dist. v. Am. Int'l Speciality Lines Ins. Co., 598 F.3d 311 (7th Cir.
    2010) ........................................................................................................................ 11

Morgan v. Harris Trust & Sav. Bank of Chi., 867 F.2d 1023 (7th Cir. 1989) ............................. 33

Nelski v. Trans Union, LLC, 86 Fed. Appx. 840 (6th Cir. 2004) ................................................. 28

Pinner v. Schmidt, 805 F.2d 1258, 1262 (5th Cir. 1986) ............................................................. 27

Pittman v. Experian Info. Sols., Inc., 901 F.3d 619 (6th Cir. 2018) ..................................... *passim*

RB&W Mfg. LLC v. Buford, 263 F. App'x 486 (7th Cir. 2008) .................................................. 34

Salem v. Legal Liaison Serv., 2019 U.S. Dist. LEXIS 36044 (N.D. Ill. Mar. 6, 2019) .............. 25

Sarver v. Experian Info. Sols., 390 F.3d 969 (7th Cir. 2004) ............................................... *passim*

Saunders v. Branch Banking & Tr. Co. of Vir., 526 F.3d 142 (4th Cir. 2008) ........................... 20

Seamans v. Temple Univ., 744 F.3d 853 (3d Cir. 2014) .............................................................. 19

Shames-Yeakel v. Citizens Fin. Bank, 677 F. Supp. 2d 994 (N.D. Ill. 2009) ............................ 20

Stagman v. Ryan, 176 F.3d 986 (7th Cir. 1999) .......................................................................... 35

Stewart v. Credit Bureau, Inc., 734 F.2d 47 (D.C. Cir. 1984) .................................................... 13

Van Veen v. Equifax Info., 844 F. Supp. 2d 599 (E.D. Pa. 2012) ............................................... 14

Walton v. BMO Harris Bank N.A., 761 F. App'x 589 (7th Cir. 2019) ................................... 12, 16

Wilson v. CARCO Grp., Inc., 518 F.3d 40 (D.C. Cir. 2008) ...................................................... 13

## **JURISDICTIONAL STATEMENT**

This appeal is taken from the final decision of the U.S. District Court for the Northern District of Illinois entered on May 12, 2021 by the Honorable Virginia M. Kendall, U.S.D.J. and the Order denying the Motion for Reconsideration. Plaintiff filed the Motion for Reconsideration on June 9, 2021, which was subsequently denied on August 17, 2021. The District Court had jurisdiction as a civil action arising under the law of the United States pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## **STATEMENT OF THE ISSUES**

Question 1.     Whether the District Court erred in finding that the dispute required a legal determination, where the report failed to indicate the existence of a Trial Period Plan ("TPP"), and payments thereunder, and where such incompleteness misled Plaintiff's creditor.

Proposed Answer:     Yes. The lower court erred by disregarding the prevalent case law supplied by Plaintiff that the dispute was a factual dispute, and that the report was both incomplete and misleading.

Question 2. Whether the District Court erred in its factual finding that there was no notation or summary of dispute within the credit report?

Proposed Answer: Yes. The lower court ignored or misinterpreted the evidence of the credit report itself, which has no notation of dispute.

Question 3.     Whether the District Court erred in finding that Defendant's investigation was reasonable as a matter of law despite evidence from the consumer which indicate the furnisher is unreliable.

<u>Proposed Answer</u>:     Yes. The lower court erred by ignoring the evidence of unreliability and allowed Experian to escape conducting its own reinvestigation.

## **STATEMENT OF THE CASE**

Mr. Chaitoff (Plaintiff-Appellant, hereinafter "Chaitoff") filed his complaint under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") against Defendants Ocwen Loan Servicing, LLC, Trans Union, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc. in the Northern District of Illinois on October 31, 2018. Complaint (Dkt 1). By the time dispositive motions were filed, only Experian Information Solutions, Inc. (Defendant-Appellee, hereinafter "Experian") remained in the case.

The following facts are <u>undisputed</u> and are taken from the District Court Opinion.[1] The pertinent allegations regard a credit entry or "tradeline" on Chaitoff's Experian credit report. The tradeline stems from a mortgage. Around 1995, Chaitoff purchased a residential property located in Highland Park, New Jersey, where he lived until September 2016. Chaitoff refinanced his home in 2012, obtaining a $329,627 mortgage through Ocwen Loan Servicing, LLC.

In early 2016, Chaitoff lost his job and consequently became late on his payments. In April 2017, Plaintiff received a Trial Period Plan Notice from Ocwen, notifying Plaintiff that he was approved to enter into a Trial Period Plan ("TPP") for a standard loan modification. The TPP required that Chaitoff make trial payments of $2,661.20 in May, June, and July of 2017, in order to permanently modify his mortgage. The TPP Notice stated:

> [E]xcept for your monthly mortgage payment amount during the trial period, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the trial period . . . Your current loan documents remain in effect;

---

[1] Although the District Court also includes a section detailing Experian's "extensive" procedures and other additional facts, Plaintiff specifically objected to and disputed these statements in his Counterstatement of Material Facts (Dkt 77) as either hearsay and directly opposed by Experian's testimony, or mischaracterization of facts. Thus, disputed facts should not have been included in the Court's statement of facts and will not appear here. *See infra*.

however, you may make the Trial Period Plan payment instead of the payment required under you loan documents.

The TPP also included the following provision regarding the reporting of the mortgage to the Credit Reporting Agencies ("CRAs"):

> Credit Reporting: We will continue to report the delinquency status of your loan to credit reporting agencies as well as your entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE IS [sic] CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE. For more information about your credit score, go to ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

Chaitoff successfully made the TPP payments in each of May, June, and July 2017. Following these successful payments, the permanent modification of the mortgage was implemented effective August 1, 2017.

Starting in August 2017, Ocwen's account on Experian's credit report reflected Chaitoff's account as being timely paid with no delinquencies from August 2017 forward. Concerning, May, June, and July 2017, the Experian report only reported Plaintiff as late. There was no indication within Experian's credit report that Chaitoff had made any payment to Ocwen during May, June or July. There was also no indication that Chaitoff had entered into and was abiding by a TPP during this time period.

On May 14, 2018, in order to address the late payment reportings of May, June, and July, Chaitoff sent a written dispute letter to Experian, which stated that "[s]ince the modification, and agreed decrease in amount due, I made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely." Attached to the dispute were documents on Ocwen letterhead regarding the trial payments made pursuant to

the TPP. It is undisputed by Experian that with his dispute, Chaitoff submitted documents, dated April 17, 2018, from Ocwen to Chaitoff that explain that Chaitoff's "trial payments for the modification were completed on time." (Dkt. 80, ¶ 49; Dkt 72-5). Chaitoff also provided a letter from Ocwen dated April 14, 2017, showing Ocwen's approval of Chaitoff's entrance into the TPP. (Dkt 72-5).

In response to the May dispute, Experian sent an Automated Consumer Dispute Verification ("ACDV") to Ocwen on May 28, 2018, advising Ocwen of Chaitoff's dispute. Ocwen responded on May 29, 2018, indicating that Plaintiff's payment history should report as at least 180 days past due from October 2016 through July 2017. Accordingly, Experian concluded its investigation, and verified that Chaitoff was delinquent through July 2017 on the resultant credit report. Experian took no further action during the course of its investigation to determine whether a TPP had been entered into, whether payments were made in accordance with the TPP, or whether this agreement should be reflected on the report beyond submission of the ACDV to Ocwen.

On July 2, 2018, Chaitoff sent a second dispute letter to Experian, again disputing the late payments, and the failure to notate as to the TPP. Again, Chaitoff submitted supporting documentation from Ocwen.  Once again, Experian forwarded the dispute to Ocwen in an ACDV. Ocwen again responded on July 15, 2018, that Plaintiff was at least 180 days past due in his payment from October 2016 through July 2017, again despite the timely payments made under the TPP, which was his only obligation. Experian, again, merely updated the account information with what Ocwen furnished and took no further action.

Experian's failure to report that Chaitoff had entered into a TPP, and made payments during each of May, June, and July 2017, resulted in adverse credit decisions. The most pertinent credit decision that followed from the inaccurate and incomplete reporting is the denial of a home loan

from FM Home Loans ("FMHL"), which occurred on April 10, 2018. *Id*., ¶ 41. Home Loans confirmed that it determined that Chaitoff was ineligible for the loan after reviewing the documents with the application and noting that Chaitoff had three late payments in the prior twelve months at the time of his loan application. (Dkt 80, ¶ 50). Home Loans specifically identified that Chaitoff was ineligible because of the non-payment reflected in May, June, and July of 2017. *Id*. However, FMHL's understanding of the status as "non-payment" during this period was only reached through the inaccurate and incomplete reporting of Experian; Chaitoff had made payment during these months in accordance with the TPP as instructed by Ocwen. The Ocwen account is the *only* account identified as responsible for Chaitoff's ineligibility. *Id*., ¶ 51.

Chaitoff also identified three other instances in which he was denied credit based on the Ocwen reporting. Chaitoff was denied by Northwest Federal Credit Union for a requested loan, for the "principal reason" of "delinquent past or present credit obligations with others." *Id*., ¶ 54. Chaitoff was further given a high interest rate of 8.39% on an auto loan. *Id*., ¶ 55. Although Chaitoff was finally able to obtain a mortgage in 2019, the year-long delay in his search resulted in the loss of equity and increased rent. *Id*., ¶ 57. Finally, Chaitoff testified to extreme emotional distress, "stress and anxiety leading to physical complications in the form of back pain." *Id*., ¶ 59.

On summary judgment, the District Court found that Chaitoff's dispute was one regarding the "legal accuracy of his loan modification, but not the factual accuracy." *Chaitoff v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 90281, at *18 (N.D. Ill. May 12, 2021). Accordingly, because under Seventh Circuit law, legal disputes between consumers and the consumer reporting agencies are not subject to the FCRA, the FCRA cannot be applied here. The District Court further held that Experian's procedures were reasonable as a matter of law because "[w]hile Experian was put on notice of a potential error when Plaintiff contacted Experian, Experian took reasonable

action afterwards to ensure the information it was receiving from Ocwen was accurate. Plaintiff does not present any additional facts that Experian's procedures for reinvestigating Plaintiff's claim were unreasonable." *Id*. at *23-24.

Chaitoff timely moved for reconsideration, on the basis that the District Court committed two clear errors of law. First, the credit report indisputably contained two inaccuracies: 1) the failure to report the existence of and compliance with a TPP, and 2) the failure to notate the consumer's dispute. Chaitoff contended that the omission of the TPP was not a legal question, but a factual question of incomplete and misleading information. In fact, the District Court did not conduct any analysis of whether the omission was misleading or otherwise incomplete. Even so, the failure to notate Chaitoff's dispute was also in contravention to the FCRA's specific obligations concerning the reporting of such disputes. Concerning Experian's failure to notate Chaitoff's dispute, the District Court stated that the "Plaintiff provides zero factual support for this assertion, and in fact, Defendant's supplied facts rebut this." *Id*., at *20. But the District Court failed to point to anywhere in the record where Defendant supplied any facts to rebut this argument, and any look at the evidence clearly shows an absence of the failure to mark as in dispute. The District Court's citations to the record are actually devoid of any denotation and the Court's bare citations fail to explain exactly to what the Court was referring.

The second error of law expressed in the Motion for Reconsideration concerns the reasonableness of Experian's inaccuracies. Under Seventh Circuit law, the reasonableness of Experian's conduct and policies must be presented to a jury. Binding case law from the Seventh Circuit, as well as persuasive case law from the Ninth, Eleventh, Fifth, and Third Circuits, demonstrate that mere reliance on an ACDV will be insufficient to determine reasonableness as a matter of law where a dispute contains sufficient information. But instead, the District Court found

6

that "Experian had no reason to doubt the accuracy of information provided by Ocwen during the time period relevant to this action because Experian subjected Ocwen to all of Experian's quality control measures . . . ." *Id*. at *14. As such, under the District Court's view, Experian could rely on Ocwen's response to a dispute instead of conducting its own reinvestigation, despite case law that states the reasonableness of that decision is a question of fact.

Despite pointing out the clear errors of law and the clear failure to properly evaluate inaccuracy under a misleading analysis, the District Court denied the Motion for Reconsideration on August 17, 2021. (Dkt 96). The Court found that Chaitoff's argument that the Court applied the wrong standard for inaccuracy was unavailing because Chaitoff only re-cited the same case law in his original briefing on the motion for summary judgment. The District Court found that the "fact that Plaintiff does not agree does not constitute the basis for a proper motion for reconsideration." (Dkt 96, p. 2). The District Court also held that, in relation to Chaitoff's arguments on the Court clearly ignoring Seventh Circuit precedent, the "Court need not tarry over Plaintiff's arguments; Plaintiff merely wishes to relitigate the Court's Opinion but the Court's earlier reasoning stands." (Dkt 96, p. 2).

Now, Chaitoff brings this appeal of the aforementioned orders so that the Circuit can correct the District Court's manifest errors of law in regards to standard and precedent, as well as procedure.

## <u>SUMMARY OF THE ARGUMENT</u>

A comparison between two scenarios best illustrates Chaitoff's argument. Imagine Consumer A, who took out a twenty-year mortgage in 2010. Consumer A lost his job in 2019, and was unable to make payments starting December 2019. Since December 2019, Consumer A has not made a payment on the mortgage. For the months of January, February and March of 2020,

7

Consumer A's credit report continuously reflects non-payment and delinquency. Consumer B also took out a mortgage in 2010. Consumer B lost his job in 2019, and was unable to make payments starting December 2019. Consumer B contacted his creditor, advised them of his employment status, and reached an agreement to enter into a loan modification that would lower his monthly payments to avoid going delinquent. The agreement stated that Consumer B needs to enter a three month trial period where the consumer must pay only the post-modification monthly payment amount. Consumer B complies with these directions and makes timely payment in January, February and March of 2020.

The question presented by this appeal applies to these facts. Should the credit reports of Consumer A and B report the same non-payment and delinquency during January, February, and March? Or, should Consumer B's credit report reflect that Consumer B reached an agreement for these three months, and responsibly paid exactly what was asked of him in each of January, February and March? Because potential creditors will see Consumer B as one who is getting back on track, and significantly less risky where he reached an agreement and paid under the agreement, than had he made no agreement and no payment, Consumer B's credit report would incomplete and misleading if no indication of these facts were reported.

Chaitoff entered into a TPP with his creditor Ocwen. Chaitoff complied with the terms of the TPP. Nonetheless, Chaitoff's credit report never indicated that Chaitoff reached a TPP with his creditor or made payments thereunder. Instead, Chaitoff was reported as delinquent, just as a consumer having no payments would be. After learning of the errors, Chaitoff submitted two disputes to Experian. Both disputes informed Experian of the TPP, the payments thereunder, and the impact the erroneous reporting was having on his credit. With each dispute, Chaitoff also provided Experian with documentary evidence between Chaitoff and Ocwen concerning the

existence of the TPP and Chaitoff's timely compliance thereunder. None of the documentary evidence proving the existence of a TPP, or payments made thereunder, were contested by Experian or Ocwen at any time.

The facts surrounding Experian's investigation of the disputes are not disputed. During the course of handling both disputes, Experian followed the same procedure. Experian forwarded an ACDV transmission to Ocwen seeking verification of the current reporting. In response to both disputes, Ocwen verified the information and did not inform Experian that Chaitoff had entered into or made payment under a TPP. Experian took no further investigative steps, and continued to report Chaitoff as having made no payments, just as it would a consumer that never paid his bill or reached any agreement with the creditor.

The District Court granted summary judgment in favor of Experian on the issue of credit reporting accuracy. The District Court held that Chaitoff's credit report contained a legal inaccuracy, as opposed to a factual inaccuracy, and therefore was beyond the scope of the Fair Credit Reporting Act claim. Specifically, the Court held that because Chaitoff's underlying dispute required a determination as to the validity of the TPP, the determination at issue was legal in nature. Chaitoff's dispute however does not seek to undermine the validity of the TPP, or present any other defense to the debt obligated thereunder. Chaitoff's dispute relates solely to the reporting of his payments pursuant to a TPP. This dispute requires examination of facts alone—whether there is a TPP, and whether Chaitoff made payments thereunder. These facts are not disputed by Ocwen, Experian, or Plaintiff; and therefore, do not require any legal determination. Thus, under Seventh Circuit law, it is a factual inaccuracy at issue in this case, subject to the FCRA's protections.

The District Court also granted summary judgment in favor of Experian on the issue of reasonableness. The Court reached this conclusion by two means. First, the Court relied on an

affidavit from Experian generally stating that it vets furnishers through "extensive procedures." Second, the Court held that after receiving Chaitoff's extensive disputes and documentary evidence, Experian had only one obligation—to provide notice of the dispute to Ocwen. Therefore, because Experian met this obligation, Experian handled Chaitoff's dispute properly.

Problematically, the District Court's opinion on reasonableness rejects binding Seventh Circuit law. The Seventh Circuit has clearly articulated that a CRA's vetting of furnishers may be sufficient *until* the CRA receives notice of a dispute in *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971-72 (7th Cir. 2004). After receiving a dispute, however, the Seventh Circuit has articulated in *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) that a CRA is in a "very different position" and exclusive reliance on the furnisher is no longer justified. To the contrary, the CRA has a duty to go beyond the original source when the consumer has alerted the CRA that the source may be unreliable.

In this case, Chaitoff clearly articulated that a TPP had been entered, and payments made in accordance with the plan in his dispute letter to Experian. Chaitoff also attached documentary evidence from Ocwen of this fact, twice. This information directly contradicted the information Experian was receiving from Ocwen. Ocwen never informed Experian of the existence of a TPP or payments thereunder. Accordingly, Chaitoff had satisfactorily put Experian on notice that Ocwen may be considered an unreliable source, by providing incomplete or misleading information. Under *Henson*, this triggered a duty upon Experian to go beyond the original source and conduct its own independent investigation. However, Experian completely failed to follow this duty, and simply parroted back the information verified by Ocwen. Under Seventh Circuit law, such an investigation is unreasonable, and certainly cannot be considered reasonable *as a*

10

*matter of law*. Because the District Court relied exclusively on *Sarver*, and provided a wholesale rejection of *Henson*, reversal is warranted.

## STANDARD

Appellate courts "review the district court's legal conclusions de novo and it's finding of fact and the application of law to facts for clear error." *Milwaukee Metro Sewerage Dist. v. Am. Int'l Speciality Lines Ins. Co.*, 598 F.3d 311, 316-17 (7th Cir. 2010) (*citing Cohen Dev. Co. v. JMJ Props., Inc.*, 317 F.3d 729, 735 (7th Cir. 2003)). "A finding is clearly erroneous only when this court 'is left with a definite and firm conviction that a mistake has been committed.'" *Cohen Dev. Co.*, 317 F.3d at 735 (*citing Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 630 (7th Cir. 2001)).

## ARGUMENT

### A.  FCRA BACKGROUND

The FCRA requires "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681 (emphasis added). The FCRA also states that, "unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681. Further, in reading the FCRA's requirement that agencies ensure the completeness of credit reports, courts are also required to interpret the FCRA liberally. *See Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016) ("[C]ourts construe remedial consumer-protection statutes liberally in order to best serve Congress' intent." (Internal citations omitted)).

### B.  The Trial Court Committed Clear Errors Regarding the Accuracy of the Report

Inaccuracy is an essential element to Chaitoff's FCRA claims. As a threshold matter, to bring a claim under § 1681e(b), the FCRA requires a plaintiff to show that a consumer reporting

agency prepared a report containing inaccurate information, stating that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see also Denan v. Trans Union*, LLC, 959 F.3d 290, 293-94 (7th Cir. 2020) (discussing how a consumer reporting agency cannot be held liable under the FCRA if it did not report inaccurate information); *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (holding same); *Sarver*, 390 F.3d at 971 ("[T]o state a claim under [§ 1681e(b)], a consumer must sufficiently allege that a credit reporting agency prepared a report containing inaccurate information.").

§ 1681i(a)(1)(A) also requires an inaccuracy. That section states:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information.

"Therefore, [the Court] must determine whether the jury could reasonably have concluded that [the CRA] would have discovered the inaccuracy in [plaintiff]'s report . . . 'if it had reasonably investigated the matter.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010) (*citing Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

Inaccuracies by way of omission have been recognized since the FCRA's inception. In introducing the bill, Senator Proxmire reviewed the types of inaccuracy that can harm credit consumers. "He explicitly addressed 'incomplete information' as a type of inaccuracy distinct from misleading information, stating that 'because of the increased computerization and standardization of credit bureau files, all of the relevant information is not always reflected in a person's files.'" *Koropoulos v. Credit Bureau, Inc.*, 236 U.S. App. D.C. 136, 734 F.2d 37, 43 (1984) (*citing* 115

Cong. Rec. 2411 (1969)). Indeed, within the conference report on the FCRA, the Senators even placed a specific example of the type of information that must be provided in a consumer credit report for it to be considered complete:

> The House conferees intend that this requirement [to follow reasonable procedures to assure maximum possible accuracy] shall include the duty to differentiate between types of individual bankruptcies (e.g., between straight bankruptcies and chapter XIII wage earner plans), and that the disposition of a wage earner plan where the consumer conscientiously carries out his responsibilities under it should be duly noted.

> *Id.* (*citing* H.R. Rep. No. 1587, 91st Cong., 2d Sess. 29 (1970) (conference report)).

> *Koropoulos* also sets forth the standard for determining maximum possible accuracy which

includes completeness:

> The court, in determining whether a violation of 1681e(b) has occurred, would weigh the potential that the information  will create a misleading impression against the availability of more accurate [or complete] information and the burden of providing such information. Clearly the more misleading the information [*i.e.*, the greater the harm it can cause the consumer] and the more easily available the clarifying information, the greater the burden upon the consumer reporting agency to provide this clarification. Conversely, if the misleading information is of relatively insignificant value, a consumer reporting agency should not be required to take on a burdensome task in order to discover or provide additional or clarifying data, and it should not be penalized under this section if the procedures used are otherwise reasonable.

> *Koropoulos*, at 42 (*citing Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 952 (D. Haw. 1982); *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C. Cir. 1984) (confirming § 1681e(b) balancing test).

Put another way, "where the potential harm is great and the burden small, a consumer reporting agency's duty to clarify inaccurate or incomplete information is at its apogee." *Wilson v. CARCO Grp., Inc.*, 518 F.3d 40, 42 (D.C. Cir. 2008); *see also Cortez*, 617 F.3d at 709.

Thus, a credit entry can be "incomplete or inaccurate" within the meaning of the FCRA because it is patently incorrect, or because it is misleading or materially incomplete in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158

13

F.3d at 895; *Koropoulos*, 734 F.2d at 40; *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 606 (E.D. Pa. 2012). In this case, the tradeline was materially incomplete and misleading in such a way that it *actually* adversely affected a credit decision.

> a. *The District Court's Conclusions As to Accuracy—the Existence of a Legal Determination*

Chaitoff's credit report was inaccurate for two distinct reasons. First, the failure to advise potential creditors as to the TPP rendered the report incomplete. Second, the resulting report was misleading because it implied Chaitoff failed to make any payment during the TPP period, and had not entered into agreement with the creditor that allowed for a reduction of the monthly payment. Nonetheless, the District Court concluded the report was accurate under a separate and independent theory—the accuracy of the report had become a "legal determination." The District Court's decision held that Chaitoff's dispute was "only that the information Ocwen reported to Experian was legally inaccurate because his loan was modified by the TPP." *Chaitoff*, 2021 U.S. Dist. LEXIS 90281, at *18-19.  However the mere existence of a TPP agreement between Ocwen and Chaitoff, and Chaitoff's payments consistent with that agreement do not invoke any legal determination as to the validity of the debt.

The Seventh Circuit has recently explained how to identify when a dispute is legal versus factual in *Chuluunbat v. Experian Info. Sols., Inc*., 4 F.4th 562, 567-68 (7th Cir. 2021). The "central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone." *Id*. at 568. An issue is a legal determination when a court is employed to decide a legal issue. *Id*. The Seventh Circuit also provided guideposts. Determining whether a debt is valid is a legal determination. *Id*. Determining whether the underlying legal documents do not meet certain legal requirements is a legal determination. *Id*. Determining whether a debt was assigned

14

is a legal determination. *Id*. In contrast, determining who owns the debt, the amount owed, and whether a consumer incurred a payment are not legal determinations. *Id*.

Here, the District Court articulated that Chaitoff's dispute requires a court to adjudicate whether the loan was in fact modified by the TPP. But this is a factual error concerning to what Chaitoff's dispute pertains. There is no dispute between Chaitoff, Experian, or Ocwen concerning the legal validity of the underlying debt between Chaitoff and Ocwen. Nor is there a dispute that Chaitoff entered into a TPP, or that Chaitoff made payments throughout the TPP in accordance with Ocwen's specific instruction. Chaitoff's dispute relates to the credit reports failure to report the *existence* of the TPP and the timely payments made thereunder. The existence of the TPP is not in doubt, and only requires examining the facts and documents to verify. Therefore, because Chaitoff is not disputing the validity of the TPP, Chaitoff's dispute fits clearly within the guideposts of the Seventh Circuit for non-legal determinations. In fact, Chaitoff's dispute fits directly within the given example, as he is essentially disputing when his payments were made, as they were not reflected on the tradeline, a purely factual dispute. Chaitoff's dispute does not require application of any law to facts, but examination of the facts alone: did Chaitoff make payments in accordance with the TPP? Thus, the District Court's finding of a legal dispute should be reversed.

In fact, courts have repeatedly held that the existence of an agreement, and payments thereunder, do not require a legal determination. In *Mileva*, on identical facts, the court precisely addressed whether the failure to credit report the existence of a TPP presented a legal question. The Court squarely held that the determination of the existence of a TPP, or the payments thereunder, "does not rest on a legal dispute." *Mileva v. Trans Union, LLC*, 2021 U.S. Dist. LEXIS 59503, at *24 (N.D. Ill. Mar. 29, 2021).

Similarly, in *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021), the consumer had his mortgage discharged in bankruptcy, but Experian continued reporting the discharged nonetheless. There, Experian argued that whether the debt was in fact discharged required a "legal determination." *Id.* at 946. The Eleventh Circuit rejected this argument holding "there is no doubt that Losch's mortgage was discharged. Thus, this case doesn't involve a legal dispute about the validity of the underlying debt."

Below, in discussing the existence of a legal question, the District Court cited to *Walton*, 761 F. App'x at 591, but this case is inapplicable and has no bearing on the instant case. *Chaitoff*, 2021 U.S. Dist. LEXIS 90281, at *19. In *Walton*, the case against Equifax was dismissed on accuracy grounds: "Equifax reported only the information BMO Harris provided, and Walton offers no evidence showing that BMO Harris's account of her payment history or the amounts owed is inaccurate. Her unsupported assertions are not sufficient to contradict the evidence in the record." 761 F. App'x at 591. In contrast to *Walton*, the instant case involves a situation where Chaitoff has in fact demonstrated the existence of an incomplete and materially misleading credit report. At the very least, Chaitoff has demonstrated, and no party contests, that a TPP exists and that he made payments thereunder. And further, that Chaitoff provided Experian with sufficient information to reach this conclusion on its own.

The District Court erred in its analysis. There is no dispute as to Chaitoff's underlying debt. Rather, the dispute related to a factual error—failure to report entrance into and payment pursuant to a TPP. Thus, the Court should adopt the holdings of *Mileva* and *Losch*. As this was the central holding relating to accuracy, the Court's opinion on accuracy must be reevaluated as to whether the report was incomplete or misleading.

16

>    b.  *Omitting TPP Information From a Consumer Report Constitutes Incomplete Reporting*

The Sixth Circuit has already determined whether the failure to report that a consumer has entered into a Trial Modification Plan, and complies with the plan, constitutes an incomplete credit report in *Pittman v. Experian Info. Sols., Inc*., 901 F.3d 619, 625 (6th Cir. 2018). There, the court was addressing an identical fact pattern but ruling on the issue of furnisher liability under 15 U.S.C. § 1681s-2(b), whereas the instant case addresses the issue of CRA liability under 15 U.S.C. § § 1681e(b) and 1681i. Before reaching the ultimate question, *Pittman* first addressed the elements of a claim under § 1681s-2(b). *Pittman* concluded that any claim under § 1681s-2(b) requires the plaintiff to show the existence of an inaccurate or incomplete credit report, just as any claim under § 1681e(b). *Id*. at 630.

Given the requirement of an erroneous credit report, *Pittman* began its analysis into whether the plaintiff's facts could be considered inaccurate. There, the TPP said that Pitman was required to make three trial payments in a timely manner, after which the mortgage would be permanently modified. *Id*. The TPP also stated "Your credit score may be adversely affected by accepting a trial period plan…The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period." *Id*. Further, the agreement stated: "You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." *Id*.

Concerning credit accuracy, *Pittman* held that reporting Pittman as "delinquent on his loan payments without reporting the TPP implies a much greater degree of financial irresponsibility than was present here. And the existence of and Pittman's compliance with the terms of the TPP is

17

relevant information about the status of his mortgage loan. Without this information, the Servicers' reporting was incomplete." *Id*. at 639. Therefore, the Sixth Circuit held that the threshold question of whether there were credit reporting errors was decided wrongly by the district court. *Id*.

The Sixth Circuit's holding fits precisely within this court's instruction to construe remedial consumer-protection statutes liberally in order to best serve Congress' intent—because Congress's intent on this issue has been clearly explained. *Pittman*'s theory is that in the face of delinquencies, the consumer should be given credit where he or she demonstrates greater responsibility than a dead beat who lets the account continue with its delinquencies. This is precisely what Congress intended when specifying that a consumer that carries out a wage earner plan, must have his credit report reflect his good behavior, despite the fact that the bankruptcy is a delinquency. H.R. Rep. No. 1587, 91st Cong., 2d Sess. 29 (1970) (conference report).

*Pittman*'s holding also fits well with existing case law concerning omitting important information from credit reports. In *Mileva*, in the exact same circumstances, the court denied a CRA's motion for summary judgment. There, the plaintiff argued that Equifax did not include any information about the TPP or trial period payments. 2021 U.S. Dist. LEXIS 59503, at *22. Analyzing accuracy, "[t]he Court agree[d] with *Pittman* that the failure to report the existence of the Plan or the trial period payments creates at least a triable issue of fact as to whether the Equifax credit report created a materially misleading impression about Plaintiff's payment and credit history." *Id*. at*23.

Similarly, in *Koropoulos*, the D.C. Circuit addressed whether it was accurate to report a paying consumer similarly to a consumer that has not paid their outstanding debts. *Koropoulos*, 734 F.2d at 39. There, the debt collector provided the same exact credit reporting status regardless of whether the consumer paid the debt after it was turned over to collections. *Id*. at 45. The Circuit

18

held that such a reporting "would seem very much at odds with [§ 1681e(b)'s] purpose," and held that material questions of fact remained. *Id*. Accordingly, where the consumer has made payments on an outstanding debt obligation, but the credit reporting fails to reflect this status, and simply reports the consumer as though he made no payments, and reached no agreements with the debt holder, the credit report is inaccurate.

The District Court here did not consider whether the report was incomplete. Instead, the District Court focused on patent inaccuracy — if the report says Chaitoff was delinquent and Chaitoff was in fact delinquent, than the report must be considered accurate as a matter of law. The patent inaccuracy standard has been repeatedly rejected. *See, e.g.*, *Seamans v. Temple Univ*., 744 F.3d 853, 865 (3d Cir. 2014) ("[W]e agree with the three Courts of Appeals to have considered the question that even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.'").

Indeed, when given the chance to consider *Pittman*'s incompleteness theory, the District Court erroneously distinguished *Pittman*. Specifically, the Court held that because *Pittman* was addressing furnisher liability as opposed to CRA liability, its holding did not apply. Importantly however, the *Pittman* analysis is not exclusive to a theory of liability, but must also be considered while addressing accuracy. Indeed, accuracy is a necessary element for liability against both a furnisher and a CRA. If the credit report was determined inaccurate—through incompleteness— under *Pittman*, it does not matter whether the liability claim is against the furnisher as opposed to the CRA. The issue in *Pittman* was whether the credit report itself was accurate. It cannot be this Court's holding that the very same credit report must be considered accurate when suing a consumer reporting agency, but must be considered inaccurate when suing a furnisher. Such a distinction defies logic, and will additionally ensure that the same credit report may be accurate in

19

the Seventh Circuit while inaccurate in the Sixth Circuit. As such, the District Court erred when it failed to consider whether the report was incomplete.

      c.   *Chaitoff's Potential Creditor Demonstrates That the Resultant Credit Report was Materially Misleading*

Aside from incompleteness, the failure to report a TPP is also materially misleading. Even where a credit report is complete, and patently accurate, if it creates a materially misleading impression to prospective creditors, the report is considered inaccurate. *Mileva*, 2021 U.S. Dist. LEXIS 59503, at *12; *Levine v. JPMorgan Chase & Co*., 2013 U.S. Dist. LEXIS 152223, at *1 (E.D. Wis. Oct. 22, 2013); *Saunders v. Branch Banking & Tr. Co. of Vir*., 526 F.3d 142, 148 (4th Cir. 2008); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (credit report is "'incomplete or inaccurate' within the meaning of the FCRA not only when patently incorrect but also when "misleading in such a way and to such an extent that it can be expected to have an adverse effect on the consumer" (citations omitted)).

Chaitoff contends that the District Court only applied the patently correct standard of accuracy—because the reporting was technically accurate, Chaitoff's prima facie claim could not be established. *See Chaitoff*, 2021 U.S. Dist. LEXIS 90281, at *18 ("Plaintiff does not dispute the accuracy of the information . . . ."). However, if the District Court properly applied the materially misleading standard, then the District Court must have engaged in an analysis to determine whether the report was materially misleading to Chaitoff's prospective creditor. No such determination was discussed in the Court's opinion. However, the evidence demonstrates that at least one of Chaitoff's prospective creditors were in fact misled by the reporting. Given this, it is improper for the Court to conclude that the report is not materially misleading when the evidence is to the contrary.

More specifically, Experian's failure to report the TPP misled FM Home Loans, Chaitoff's creditor, concerning Chaitoff's credit worthiness; therefore, the report cannot be deemed accurate as a matter of law under the materially misleading standard. Within the FM Home Loans affidavit, it was explained that to qualify for a mortgage, Chaitoff was obligated to show that he had been able to make on time payments for twelve consecutive months. *See* Declaration of Joseph Sinensky (Dkt 77-3). It was this consecutive payment history that was required to show Chaitoff's stability and ability to consistently make monthly payments. However, "because his credit report reflected non-payment in May, June, and July 2017," he was not eligible. Factually however, it was false for the Experian report to reflect "non-payment" during this time frame, given Chaitoff's payments in accordance with a TPP. Given that Chaitoff's credit application would have yielded an approval, had Experian reported Plaintiff as making payments subject to a TPP during those months, there can be no question that the report as issued was materially misleading under the appropriate standard—application of impact on prospective creditors. Questions of fact on the issue of accuracy clearly remain.

Even accepting, *arguendo*, that the report was patently accurate, there is no argument under § 1681e(b) that the tradeline did not contain the maximum possible accuracy. A court must "weigh the potential that the information will create a misleading impression against the availability of more accurate [or complete] information." *Koropoulos*, 734 F.2d at 42. Here, the clarifying, more accurate information was readily available to Experian, presented to it with the dispute from Chaitoff. As such, when weighed against the obvious potential for a misleading impression (no payments portrayed despite the actual payments made), it was incumbent upon Experian to include information that would make the tradeline more accurate, or to give a more truthful picture of Chaitoff's mortgage payment situation other than no payment at all.

     *d. Failing to Report a Dispute As Required by the FCRA Renders the Report Incomplete*

Chaitoff's report was also inaccurate and incomplete due to Experian's failure to place a notation or summary of dispute within the report. Concerning this claim, the District Court factually erred in finding that "Plaintiff provides zero factual support for this assertion, and in fact, Defendant's supplied facts rebut this." 2021 U.S. Dist. LEXIS 90281, at *20. Chaitoff specifically directed the Court to Exhibits F and I (Dkt 72-7; 72-10), two credit reports which do not contain a dispute notation. *See* (Dkt 76, p. 8). These reports were accurate depictions of Experian's issued credit reports, as confirmed by Experian itself.[2] Exhibit C, 165:6-23 (Dkt 72-4). The District Court inexplicably failed to take this into account. The Court states that "Defendant's supplied facts rebut this," but this is incorrect and a clear error of fact. The Court cites to Dkt 72 ¶ 33, 37, which in turn cites to Experian's Exhibit I, or Chaitoff's credit report after dispute results. But nowhere in Exhibit I does Experian indicate the account as in dispute, nor does the District Court explain exactly what it means. *See also* Exhibit 6 (Dkt 77-7) 64:18-65:17.

While the account in Exhibit I does state "This item was updated from our processing of your dispute in Jul 2018," **this is not a dispute notification as required by the FCRA**. § 1681i(c) specifically provides for not only a notation of dispute, but also a copy of the statement of dispute or an accurate summary. 15 U.S.C. § 1681i(c) states:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer **and provide either the consumer's statement or a clear and accurate codification or summary thereof**.

---

[2] In fact, Experian issued credit reports to PNC Bank, Capital One Auto Finance, and Northwest FCU after receiving Chaitoff's second dispute in July 2018. For each of these issued reports, Experian's credit report never notated the dispute as required. Exhibit I (Dkt 72-10, p. 10).

The comment applied by Experian clearly does not provide a copy of Chaitoff's statement of dispute or any summary thereof. Under the relevant standard, where the facts must be taken in a light favoring the non-movant, the District Court simply cannot conclude that Experian's reports complied with § 1681i(c) through any evidence. Thus, it is a clear error of fact for the District Court to rely on the comment, "This item was updated from our processing of your dispute in Jul 2018," as it misapplies 15 U.S.C. § 1681i(c).

For these reasons, there is a clear error in the District Court's opinion regarding the accuracy of the report as it relates to the marking of the account as "in dispute."

### C. The District Court Erred in Finding Defendant's Policies Reasonable as a Matter of Law

1. <u>Circuit Case Law Holds that Reasonableness is a Question of Fact for the Jury</u>

The Seventh Circuit has laid out two corollary principles for reinvestigation claims under the FCRA. These principles are succinctly described by another circuit:

> Our sister circuits have laid out two corollary principles. First, a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004). Because "lenders report many millions of accounts to Experian daily," requiring it to examine each report individually for errors would be unduly costly. *Id.* But on the flip side of the same coin, when a "credit reporting agency . . . has been notified of potentially inaccurate information in a consumer's credit report[,] [it] is in a very different position than one who has no such notice." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286-87 (7th Cir. 1994). That's because "once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). We think those principles make good sense, and we now adopt them.
>
> *Losch*, 995 F.3d at 945.

Below, the District Court misunderstood, and failed to apply, the Seventh Circuit's two corollary principles. The District Court focused exclusively on the first principle—holding that because Experian reasonably believed that Ocwen was reputable, and Chaitoff failed to point to notice of systemic problems, Experian's dispute handling is reasonable as a matter of law. However, because Chaitoff provided two very detailed disputes to Experian, with supporting documentation, Experian was in "very different position" and was no longer able to rely solely on the belief that Ocwen was a reliable furnisher. This case *requires* application of the second corollary under binding Seventh Circuit law in *Henson*, 29 F.3d at 286-87. Indeed, the case law is unanimous in the Seventh Circuit and beyond, that where the CRA is advised of the error by the consumer, the CRA's sole action of sending an ACDV to the furnisher cannot be found sufficient as a matter of law.

In *Henson*, the court clerk erroneously entered a default judgment against the wrong party. *Id*. at 283. The plaintiff disputed the erroneous judgment with TransUnion (another CRA) however, because the Judgment Docket reflected that a judgment was in fact obtained, TransUnion went no further during its investigation. *Id*.

While analyzing what is considered a reasonable investigation of a consumer dispute, this Court set forth the appropriate standard for investigation. "A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." *Id*. A "credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." *Id*. "Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit

reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.* at 287. The Circuit provided further instruction for a claim under § 1681i: if the consumer shows that they brought the error to the credit agencies' attention, <u>the trier of fact **must**</u> weigh the various factors of reasonableness. *Id.* (Emphasis added). Accordingly, under Seventh Circuit law, if Chaitoff brought to Experian's attention the mere "possibility" that its source (Ocwen) may be unreliable, Experian has a duty to go beyond the original source in conducting its investigation. *Id.* The failure to do so, presents, at bottom, questions of fact as to whether Experian's investigation was reasonable. *Id.*; *Salem v. Legal Liaison Serv.*, 2019 U.S. Dist. LEXIS 36044, at *20 (N.D. Ill. Mar. 6, 2019) ("a reasonable jury could determine that Salem's disputes should have provided sufficient notice to Equifax that LLS was an unreliable source of information.").

The Eleventh Circuit, as shown above, has adopted the holding of the Seventh Circuit in *Losch*, 995 F.3d 937. In *Losch*, the consumer filed Chapter 7 bankruptcy but reaffirmed his mortgage in attempt to keep his home. *Id.* at 940. Soon after reaffirmation, Losch nonetheless moved the court to rescind the affirmation; as a result, Losch no longer owed any obligation on the discharged debt. *Id.* at 941. Despite the discharge, Nationstar, Losch's creditor, continued to furnish account information to Experian indicating that Losch had a past due balance due and owing. *Id.* Losch disputed this information with Experian, and in response, the sole activity conducted by Experian was to transmit the ACDV correspondence to Nationstar. Nationstar then verified the balance due and owing as accurate. *Id.* Based off the ACDV response, Experian continued to report a balance due and owing on Losch's credit report despite his dispute. *Id.* The district court granted Experian summary judgment holding "[c]ontrary to Losch's argument, the statute does not impose any duties on the credit-reporting agency other than notifying the furnisher

of the dispute and examining any information the consumer submits." *Id*. The district court explained that requiring Experian to examine specific documents to determine their legal effect would go too far. *Id*. at 942. This holding is identical to the District Court's own holding in this case.

The Eleventh Circuit reversed, relying heavily on Seventh Circuit case law, as cited above, held:

> Applying them here, we can't say that Experian's procedures were reasonable as a matter of law. Once Losch informed Experian of a factual inaccuracy in his reports, Experian needed only to investigate that single, alleged error. Experian was thus in a "very different position" than before Losch contacted it. *Henson*, 29 F.3d at 286-87.

*Id*. at 945.

*Losch* set a brightline rule for an FCRA reasonableness analysis after analyzing the Seventh Circuit case law: "where (1) Losch provided a sufficiently detailed notice to Experian for it to investigate the inaccuracy and (2) Experian did nothing other than forward the letter to its data furnisher—we cannot say that Experian's procedures were reasonable as a matter of law, such that it was entitled to summary judgment." *Id*. at 947. This rule, which is based off of Seventh Circuit law, runs directly afoul of the Order granting Summary Judgment to Experian on the issue of reasonableness on claims under both §§ 1681i and 1681e(b).

Another Eleventh Circuit decision is also instructive on the reasonableness analysis, *Collins v. Experian Information Solutions, Inc.*, 775 F.3d 1330 (11th Cir. 2015). In *Collins*, a debt collection company, Equable, sued the plaintiff on an individual debt in state court and lost. *Id*. at 1332. Despite judgment being entered for the consumer, the company continued to report to Experian that the debt was owed. *Id*. The plaintiff disputed the debt by letter to Experian, providing the docket number of the state court action and informing Experian that he won the case and that

the debt is incorrect. *Id*. Experian sent an ACDV in which Equable, in response, wrongly responded that the debt was still valid. *Id*. Most importantly, "Experian did nothing else to investigate Collins' claim." *Id*. The Eleventh Circuit confirmed the district court's findings that "an issue of material fact remained as to whether Experian's investigation was reasonable when it disregarded the small claims court information Collins provided and instead relied solely on Equable to verify the debt." *Id*. at 1333 (remanding the case on damages).

The Fifth and Ninth Circuits have also weighed in. In *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986), the Fifth Circuit concluded it was unreasonable for a CRA to contact only the creditor in its reinvestigation of a disputed debt when the CRA was on notice of the dispute between the parties. *Id*. In *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-69 (9th Cir. 2008), Experian reported a "Civil Claim judgment" on the consumer's report when it, in fact, had been dismissed. Experian did not conduct an independent investigation, but relied solely on a third party vendor to verify the dispute. *Id*. at 1069. The Ninth Circuit found that reasonableness was a jury question where Experian could have caught the error if it had conducted its own investigation. *Id*. at 1070; *see also Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (making two telephone calls to the creditor was insufficient to re-verify disputed information); *Pittman*, 901 F.3d at 639 ("Because both of the Servicers knew about the TPP . . . we think there is a genuine issue of material fact as to whether the Servicers conducted a reasonable investigation to determine whether the disputed information could be verified. This seems especially true where the evidence suggests that the Servicers knew or should have known that the information was being reported inaccurately.").

The Court's holding here also runs afoul of Third Circuit precedent, which heavily relied on Seventh Circuit precedent, in *Cushman*, 115 F.3d 220. There, the consumer was a victim of

identity theft, and raised this issue in a dispute to TransUnion. *Id*. at 222. Like here, TransUnion notified the creditor of the dispute, and then adopted the creditor's response with no further investigative steps taken. *Id*. While TransUnion argued that a "consumer reporting agency is obliged only to confirm the accuracy of the information with the original source of the information," the Third Circuit rejected this approach relying on the Seventh Circuit. "[W]hen one goes from the § 1681e(b) investigation to the § 1681i(a) reinvestigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly. Judgment as a matter of law, even if appropriate on a § 1681e(b) claim[3], thus may not be warranted on a § 1681i(a) claim." *Id*. at 225. The Court further clarified that TransUnion should have considered the furnishers (American Express and Citibank) "unreliable" given that TransUnion was provided with information from the consumer that the accounts were opened fraudulently, and the matter was nonetheless verified as accurate information. *Id*.

Binding case law from the Seventh Circuit, as well as persuasive case law from the Ninth, Eleventh, Fifth, and Third Circuits, demonstrate that mere reliance on an ACDV will be insufficient to determine reasonableness as a matter of law where a dispute contains sufficient information. Further, it is abundantly clear that "a plaintiff need not point to specific deficiencies in an agency's practices or procedures" to demonstrate a lack of reasonableness, *see Grigoryan v. Experian Info. Sols*, 84 F. Supp. 3d 1044, 1074 (C.D. Cal. 2014) (*citing Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 845 (6th Cir. 2004)).

---

[3] But once a CRA receives notice that information in a consumer report may be inaccurate, "the continued sending of [the contested information] to creditors might be viewed as a failure to maintain reasonable procedures for assuring accuracy" under § 1681e(b). *Crump v. Carrington Mortg. Servs., LLC,* 2019 U.S. Dist. LEXIS 2292, at *19-20 (N.D. Ill. 2019) (*quoting Crabill*, 259 F.3d at 664) (internal citations omitted); *see also Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426. 431 (4th Cir. 2004).

In granting Summary Judgment, the District Court applied only *Sarver*, resulting in clear error. In *Sarver*, the consumer's report listed an erroneous status of "included in bankruptcy." 390 F.3d at 970. Sarver disputed the information but only provided his name and address without other identifying information. *Id*. In response, Experian asked Sarver to provide additional information such as his Social Security number before it could investigate, which the consumer failed to do. *Id*. Experian never conducted an investigation because it never had enough information. *Id*. Addressing his § 1681i claims, the Court dismissed the claim because there was no evidence of damages, and noted that Experian may not have needed to conduct any investigation due to the failure to provide sufficient identifying information. Concerning the § 1681e(b) claims, the court held that because Experian had relied on a reputable source, it was reasonable to rely on this source unless Experian received notice of systemic problems with its procedures. *Id*. at 972. There, Experian never received even a single sufficient notice of an error, because the sole letter sent by the consumer did not even contain sufficient information to identify which consumer it was. Therefore, there was no need to proceed to the second corollary established in *Henson*.

2. Application of Circuit Case Law to the Instant Case

Importantly, the District Court affirmatively held that "Experian was put on notice of a potential error when Plaintiff contacted Experian." 2021 U.S. Dist. LEXIS 90281, at *24. Thus, under *Henson*, the trier of fact must weigh the factors of reasonableness. But instead of sending it to the jury, the District Court erred when it then held, without explanation, that Experian took "reasonable action afterwards to ensure the information it was receiving from Ocwen was accurate." *Id*. First, the District does not specifically explain what "reasonable action" Experian took. Other than the ACDV, it did nothing. But that is not enough to be reasonable as a matter of law.

29

Chaitoff provided two disputes to Experian sufficient to trigger additional investigation beyond the ACDV exchange under binding Seventh Circuit law, as well as persuasive law from the Eleventh, Third, Ninth, and Fifth Circuits. Chaitoff's first dispute was on May 14, 2018. The dispute was of "sufficient detail." Chaitoff made it clear that he had entered into a loan modification agreement and made timely payments in accordance with the agreement. (Dkt 72-5), Exhibit D. Plaintiff also explicitly explained that not reporting the modification and payments is misleading. Ex. D. Not only did Chaitoff make these clear statements, Chaitoff provided specific proof from Ocwen itself. Specifically, Chaitoff provided a letter correspondence from Ocwen, on Ocwen letterhead, that clearly stated: This is to inform you that your trial payments for the modification were completed on time. The due dates were May 1, 2017, June 1, 2017, and July 1, 2017. Ex. D. The letter also provided, on Ocwen letter head to Mr. Chaitoff containing his address and loan number, "You are approved for a Standard Modification." Ex. D. After the verification, Plaintiff disputed a second time with sufficient detail concerning TPP compliance on July 2, 2018. (Dkt 72-8), Exhibit G. Chaitoff again attached documentary evidence from Ocwen in this regard, and stated: "there is reason to believe Ocwen is reporting erroneously." Ex. G. Experian never had cause to doubt the accuracy of Chaitoff's dispute and never disputed that the evidence provided came directly from Ocwen.[4] Nonetheless, Experian only relied on the ACDV response for both

---

[4] Q. Okay. Okay. Now, Exhibit-B, Bates label 3, can you describe what this document is?
A. It's a letter from Ocwen.
Q. Who is the letter addressed to?
A. Jeffrey.
Q. Okay. Is Jeffrey the Plaintiff in this case?
A. Yes, sir.
Q. Okay. Does the letter clearly inform Mr. Chaitoff that his payments of May, June, and
7 July of 2017, were made on time? . . .
A. They were made on time, as per the trial payments for the loan modification. . . .
Does Experian have any reason to doubt the truth of the communication between Ocwen and Mr. Chaitoff, that his payments of May, June, and July of 2017, were timely made?
A. No.
(Dkt 72-4), Exhibit C, p. 80:21-82:1.

disputes, ignoring clear evidence showing that the trade line was missing key pieces of information. (Dkt 72), ¶¶ 26-27.

The disputes presented by Chaitoff put Experian on notice of the "possibility" that it could not rely on the ACDV exchange alone. During the ACDV exchange with Ocwen, Ocwen never advised Experian that Chaitoff had entered into a TPP or made payments thereunder. (Dkt 72-6), Exhibit E.[5] Yet, the documents submitted twice to Experian, which Experian accepted as true, clearly demonstrated the existence of a TPP *and* payments thereunder. Thus, Experian was clearly put on notice as to the possibility that its source (Ocwen) was providing incomplete or misleading information. Once Chaitoff brought this possibility to Experian's attention, *Henson* holds that Experian has a duty to go beyond the original source. Yet, Experian wholly failed to comply with this Circuit mandated duty, and chose to rely exclusively on the ACDV exchange. Indeed, if after Experian received information on Ocwen letterhead presenting a factually different circumstance than what Ocwen had been reporting, Experian *still* need do nothing more than submit an ACDV, what did the Seventh Circuit mean when it stated a CRA is "in a very different position than one who has no such notice" ? 29 F.3d at 286. Under the District Court's opinions, this clear and precise holding by the Seventh Circuit is rendered null and void.

The Third Circuit provided an instructive fact pattern that shows when a CRA is sufficiently put on notice that one of their furnishers may not be reliable. There, after the CRA received specific disputes that accounts were opened by an identity thief, the furnisher verified the information nonetheless. *Cushman*, 115 F.3d at 226. That the furnishers verified the disputed information in light of this information, <u>was alone sufficient basis to determine that the credit</u>

---

[5] In *Mileva*, the furnisher did actually advise the CRA about the TPP. 2021 U.S. Dist. LEXIS 59503, at *18. Both instances lead to CRA liability because while in *Mileva* it was unreasonable to ignore furnisher statements, here it was unreasonable to ignore documents provided by Plaintiff from the furnisher which directly contradicted the furnisher's reporting.

grantors were "unreliable." *Id*. Here, there was even more evidence that Ocwen was unreliable because the information received simply did not line up with Ocwen's own documents as submitted by Chaitoff.

In addition to the notice presented to Experian, Chaitoff has also brought to the Court's attention systemic problems with Experian's policies and procedures, showing liability even under *Sarver*. Experian simply has no policy or procedure in place for how to report the existence of a TPP or payments thereunder.[6] Yet, in *Pittman*, accuracy turned on the need for the credit report to disclose this specific information. If Experian has no such practice or policy, there is clearly a systemic problem which prevents credit reporting accuracy.

As such, the District Court committed a clear error of law when it failed to follow the binding Seventh Circuit case law in *Henson* and find that the issue is one for the jury, even after holding that Experian was on notice. The District Court's failure to follow precedent should be reversed.

### D. The District Court Erred in Considering As True Disputed Facts Submitted by Experian

The District Court's opinion contains a lengthy portion on Experian's procedures because it focused on the first corollary principle as the basis for dismissal. In describing Experian's

---

[6] Q. Okay. Within any of those multiple publications, is there a description on how to handle a dispute from a consumer concerning a loan modification?
A. There is a section in one of them that tells them how to dispute a loan modification.
Q. Okay. When you say, one of them, are you able to tell me the name of that guide?
A. It's the dispute trades manual or participant guide, I believe.
Q. Okay. That guide, according to your testimony, instructs an agent on how to dispute a loan modification, correct?
A. Yes.
Q. Does it instruct an agent on how to report a loan modification?
A. It does not. . . .
Q. Okay. I'm going to ask you, I want to get the same testimony for a trial loan modification, okay. Is there any instruction on how to properly report that on an Experian report?
A. Not of the documents that I'm aware of.
(Dkt 88-1; p. 58:1-11; 61:17-23).

procedures, the District Court cites to *only* Experian's Statement of Facts ("SOF"), and often did so verbatim. (Dkt. 72). However, in doing so, the Court erred in applying the basic standard for summary judgment motions.

In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is only appropriate if the movant can show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Further, in ruling on a motion for summary judgment, the court should consider the "record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989). The District Court here took the facts in favor of Experian, the movant, and did not appear to accept any undisputed facts from Chaitoff.

First, the District Court, citing paragraph 20 of the SOF, stated that "Experian's procedures for assuring the maximum possible accuracy of reported credit include working with data furnishers to ensure that they supply the most complete and accurate data possible . . . and working with consumers to proactively prevent errors in consumer credit reports." 2021 U.S. Dist. LEXIS 90281, at *10-11. Aside from being unsupported, self-serving, unspecific and conclusory, Chaitoff specifically objected to this statement and provided evidence to contradict this statement. Chaitoff's Counter statement of facts ("CSOF") (Dkt 77), cited to actual facts on the record that directly contradict these statements. Experian's corporate representative testified that in response to a dispute, Experian would not reach out to either a furnisher or a consumer and would only rely on an Automated Consumer Dispute Verification ("ACDV"). (Dkt 77, ¶ 20).

Second, the District Court cited, again verbatim, from the SOF that "Experian had no reason to doubt the accuracy of information provided by Ocwen during the time period relevant to

this action because Experian subjected Ocwen to all of Experian's quality control measures explained above . . . . There is no indication in Experian's records that Ocwen was a prevalent source of unreliable information." 2021 U.S. Dist. LEXIS 90281, at *14. Chaitoff also objected to this "fact" as disputed. CSOF, ¶ 28. This statement is wholly conclusory. But more importantly, it should be excluded because it is directly contradicted by the evidence on the record, which includes Chaitoff's two dispute letters which clearly indicate that Experian *did* have a reason to doubt the accuracy of information coming from Ocwen. Or at the very least, this specific information regarding Chaitoff's account. But since the Court adopted this statement, it discounts the consumer dispute from Chaitoff. It also allows Experian to discount and disregard all consumer disputes in its reinvestigation because the furnisher is automatically more reliable. Aside from being a complete perversion of the FCRA, it also takes Experian's statement at face value over the evidence in the case and definitely does not view all the facts in favor of the non-movant.

Finally, aside from those two statements, the District Court accepted (again, verbatim) a statement from paragraph 21 of the SOF that is vague and conclusory without evidentiary support aside from the affidavit. Paragraph 21 posits that Experian assesses the accuracy of the data using "rigorous" quality control and statutory compliance procedures. 2021 U.S. Dist. LEXIS 90281, at *11. But the use of the adjective "rigorous" is objectionable and vague, as it is used by Experian and accepted by the Court without evidence. It makes a leaping conclusion to describe vague compliance procedures that are not put forth by Experian and cannot otherwise be evaluated by the Court or Chaitoff. A party cannot rely on statements based on speculation or conjecture to avoid summary judgment. Merely conclusory allegations do not preclude summary judgment. *See RB&W Mfg. LLC v. Buford*, 263 F. App'x 486, 490 (7th Cir. 2008) (affidavit only providing conclusory allegations insufficient to prevent summary judgment when the affidavit stated that an

oral novation agreement was reached instead of relaying the facts of what happened); *see also Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) ("statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet this requirement [in Rule 56]"). In *Stagman*, this Circuit refused to consider statements that the declarant would have been advised about a termination following "standard practice." 176 F.3d at 996. But this was not enough to demonstrate personal knowledge of any of the facts. Similarly here, Defendant's vague statement does not put forth any facts, but a conclusion that there are unknown procedures and that they were applied. This statement is the equivalent of a theme park declaring that it meets all the legal safety requirements and therefore cannot be liable for an accident, without describing the specific safety procedures. It cannot stand on its own.

In sum, the District Court's rote acceptance of Experian's description of its procedures without considering the record as a whole is a clear error of law, as it does not consider the facts in a light most favorable to the non-movant, and indeed, does the opposite. It accepts all the facts in favor of the movant without documentary evidence, consideration of the evidence put forth by Chaitoff, or even the common sense inclusion of the dispute letters, the two most important documentary pieces of evidence in the case. For these reasons, the District Court erred in accepting these statements as true.

## <u>CONCLUSION</u>

The District Court made several reversible errors. It erred in finding the factual dispute concerning the existence of a TPP agreement was actually a legal dispute that could not be resolved by looking at the documents. The Court also erred by failing to conduct a full inaccuracy analysis. In doing so, it limited its scope to patent accuracy, in clear contrast to case law which states that a credit report may also be misleading, even if it is patently accurate. This omission is critical when

there is direct evidence of a misled creditor. In simple terms, Chaitoff made all of his obligated payments for twelve months, but was denied credit because his credit report did not reflect that he made payments for twelve consecutive months. This situation, endorsed by the District Court, is not only illogical, but unfair.

Even without the mention of the TPP, there is no evidence that Experian marked the account as "in dispute," despite the two clear disputes. The District Court erred in finding otherwise, without explanation. Finally, the District Court erred in finding that Experian's reinvestigation was reasonable as a matter of law, in clear contrast to what the Seventh Circuit found was an issue of fact for a jury. For these reasons, the District Court's decision to grant summary judgment to Experian must be reversed.

Dated: January 14, 2022.

Respectfully Submitted,

/s/ Daniel Zemel
Daniel Zemel, Esq.
**Zemel Law LLC**
660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
DZ@zemellawllc.com
Attorney for Plaintiff-Appellant

36

### **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. 32(f) and rule:

   This document contains 11,770 words

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   This document has been prepared in a proportionally spaced typeface using Word 2013 in 12 point Times New Roman.


s/ Daniel Zemel
Daniel Zemel, Esq.

Attorney for Appellant, Jeffrey Chaitoff

Dated: January 14, 2022.

# 21-2632

## United States Court of Appeals
## for the Seventh Circuit



JEFFREY CHAITOFF,

*Plaintiff-Appellant,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT  FOR
THE NORTHERN DISTRICT OF ILLINOIS (Eastern Division)

## APPELLANT'S APPENDIX

ZEMEL LAW, LLC
*Attorney for Plaintiff-Appellant*
660 Broadway
Paterson, New Jersey 07514
(862) 227-3106
*DZ@zemellawllc.com*

JONES DAY
*Attorney for Defendant-Appellee*
77 W. Wacker Drive - Suite 3500
Chicago, Illinois 60601
(312) 782-3939

# TABLE OF CONTENTS

*Page(s)*

Certification of Counsel ................................................................ A

Complaint, dated October 31, 2018 .................................................A1-A9

Defendant Experian Information Solutions, Inc.'s
("Defendant") Answer and Affirmative Defenses to
Plaintiff's Complaint, dated March 25, 2019.................................................A10-A30

Memorandum Opinion and Order, dated May 12, 2021.................................A31-A45

Judgment in a Civil Case, dated May 12, 2021 ......................................... A46

Order, dated August 17, 2021 .........................................................A47-A48

Notice of Appeal, dated September 3, 2021 ....................................A49-A50

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JEFFREY CHAITOFF

      Plaintiff – Appellant,

v.

TRANS UNION, LLC; OCWEN LOAN
SERVICING, LLC; EQUIFAX INFORMATION
SERVICES, LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.              **CASE NO. 21-2632**

      Defendant – Appellee.

---

## <u>Local Rule 30(d) Statement</u>

In accordance with the Local Rules of the Seventh Circuit, Plaintiff – Appellant hereby

states that the appendix attached hereto contains all of the materials required by parts (a) and (b)

of L.R. 30.

Respectfully submitted,

                          <u>/s/ Daniel Zemel</u>
                          Daniel Zemel, Esq.
                          ZEMEL LAW LLC
                          660 Broadway
                          Paterson, New Jersey 07514
                          T: 862-227-3106
                          DZ@zemellawllc.com
                          Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEFFREY A. CHAITOFF, | ) | Case No.: |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | COMPLAINT |
| TRANS UNION, LLC; OCWEN LOAN | ) | |
| SERVICING, LLC; EQUIFAX | ) | |
| INFORMATION SERVICES, LLC; | ) | |
| EXPERIAN INFORMATION SOLUTIONS, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Jeffrey A. Chaitoff (hereinafter "Plaintiff") alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages arising from Defendants' violations of the Fair Credit
   Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in this district under 28 U.S.C §1391(b).

## PARTIES

4. Plaintiff is a natural person who at all relevant times has resided in Orlando, Florida.

5. Ocwen Loan Servicing, LLC ("Ocwen") is a corporation regularly conducting business in
   the State of Illinois with its corporate address 1661 Worthington Road, West Palm Beach,
   Florida 33409. Ocwen regularly, and in the ordinary course of business, furnishes

information to various consumer reporting agencies regarding Ocwen's transactions with consumers and is a "furnisher" of information as contemplated by FCRA §1681s-2(a) & (b).

6. Defendant Trans Union, LLC ("Trans Union") is a business entity that regularly conducts business in Illinois with its principal place of business at 555 West Adams, Chicago, Illinois 60661. TransUnion is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

7. Defendant Equifax Information Services, LLC ("Equifax") is a business entity that regularly conducts business in Illinois with its principal place of business as 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(F) and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

8. Defendant Experian Information Solutions, Inc. ("Experian") is a business entity that regularly conducts business in Illinois with its principal place of business as 475 Anton Boulevard, Costa Mesa, California 92626. Experian is a "consumer reporting agency", as defined in 15 U.S.C. § 1681a(F), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

## FACTUAL STATEMENT

9.  On or about March 2012, Plaintiff took out a home mortgage from Defendant Ocwen and
    began making timely payments.

10. On or about April 2016, Plaintiff lost his job and was unable to meet his monthly payment
    obligations to Ocwen.

11. Plaintiff informed Ocwen of his unemployed status and Ocwen allowed Plaintiff to enter
    into an unemployment forbearance plan in June 2016.  This plan paused Plaintiff's
    monthly payment requirement until August. Thereafter, Plaintiff's monthly payment
    requirements were reduced so that he could afford to make timely payment.

12. After successfully completing the unemployment forbearance plan in April 2017, Plaintiff
    was eligible for a trial modification of the mortgage loan known as the Standard
    Modification.

13. Plaintiff then entered into a modification agreement with Ocwen on or about April 20,
    2017. Under the modification, Ocwen had set out a new monthly payment plan for
    Plaintiff.

14. Plaintiff abided by the terms of the modification agreement in their entirety and made
    timely monthly payments to Ocwen.

15. Despite Plaintiff's timely payments of Ocwen's programs, Ocwen began reporting
    Plaintiff's payments as late.

16. In 2018, for the first time, Plaintiff discovered that Ocwen had been reporting him as late
    for a number of months.  Irate, Plaintiff repeatedly contacted Ocwen telling them to
    correct the errors on his credit report. Ocwen refused to do so.

17. Plaintiff, through counsel, submitted a number of dispute letters between May and July of 2018 with supporting documents to TransUnion, Equifax, and Experian.

18. TransUnion, Equifax, and Experian each forwarded Plaintiff's dispute to Ocwen.

19. Thereafter, Ocwen failed to conduct a reasonable investigation and verified the information reported as accurate.

20. Similarly, TransUnion, Equifax, and Experian failed to reasonably reinvestigate Plaintiff's disputes.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### by OCWEN

21. Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

22. At all times pertinent hereto, Ocwen was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

23. Ocwen furnished information concerning Plaintiff's account to Experian, Trans Union, and Equifax.

24. Ocwen willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

25. Additionally, Ocwen willfully and negligently failed to report the trade line as one in dispute.

26. As a direct and proximate cause of Ocwen's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

27. Ocwen's conduct, action, and inaction was willful, rendering it liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Ocwen was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this Court grant him a judgment against Ocwen for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

**COUNT II**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**BY EQUIFAX**

28. Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

29. Defendant Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

30. Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

31. Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b). This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Equifax ignored this.

32. Equifax negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i. If Equifax conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

33. Equifax also negligently and willfully failed to mark the item as in dispute.

34. As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

35. Equifax's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this Court grant plaintiff a judgment against Equifax for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY TRANS UNION

36. Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

37. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

38. Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

39. Trans Union negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b). This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Trans Union ignored this.

40. Trans Union negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i. If Trans Union conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

41. Trans Union also negligently and willfully failed to mark the item as in dispute.

42. As a direct and proximate cause of Trans Union's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

43. Trans Union's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this Court grant Plaintiff a judgment against Trans Union for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

### COUNT IV
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### BY EXPERIAN

44. Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

45. Defendant Experian prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

46. Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

47. Experian negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b). This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Experian ignored this.

48. Experian negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i. If Experian conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

49. Experian also negligently and willfully failed to mark the item as in dispute.

50. As a direct and proximate cause of Experian's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

51. Experian's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this Court grant Plaintiff a judgment against Experian for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

## JURY TRIAL DEMAND

52. Plaintiff demands a jury trial on all issues so triable.

Dated this 31st day of October, 2018.

Respectfully Submitted,

*/s/ Frank Venis*
Frank Venis, Esq.
Venis & Copp LLP
205 W. Randolph St. (Suite 2000)
Chicago, IL 60606
(312) 469-0707
venis@venisandcopp.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEFFREY A. CHAITOFF, | |
| Plaintiff, | |
| v. | Case No. 18-cv-07259 |
| TRANS UNION, LLC; OCWEN LOAN SERVICING, LLC; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC., | Hon. Virginia M. Kendall |
| Defendants. | |

**EXPERIAN INFORMATION SOLUTIONS, INC.'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

NOW COMES Defendant Experian Information Solutions, Inc. ("Experian"), by its undersigned counsel, and in answer to the Complaint filed by Jeffrey A. Chaitoff ("Plaintiff"). As an initial matter, Experian reserves the right to supplement or amend its answer based on future investigation or discovery. Experian states as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages arising from Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

**ANSWER:** In response to paragraph 1 of the Complaint, Experian admits only that the Complaint purports to state claims under the Fair Credit Reporting Act ("FCRA").  To the extent the allegations in Paragraph 1 are directed toward Experian, Experian denies, generally and specifically, each and every allegation contained therein. To the extent the allegations relate to the other parties, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

**ANSWER:** In response to paragraph 2 of the Complaint, Experian admits that Plaintiff has

alleged that jurisdiction in this Court is proper.  Experian states that this is a legal conclusion

which is not subject to denial or admission.

3.      Venue is proper in this district under 28 U.S.C §139l(b).

**ANSWER:** In response to paragraph 3 of the Complaint, Experian admits that Plaintiff has

alleged that venue in this district is proper.  Experian states that this is a legal conclusion which

is not subject to denial or admission.

## PARTIES

4.      Plaintiff is a natural person who at all relevant times has resided in Orlando,
Florida.

**ANSWER:** In response to paragraph 4 of the Complaint, Experian is without knowledge or

information sufficient to form a belief as to the truth of the allegations contained therein, and

therefore denies the same.

5.      Ocwen Loan Servicing, LLC ("Ocwen") is a corporation regularly conducting
business in the State of Illinois with its corporate address 1661 Worthington Road, West Palm
Beach, Florida 33409.  Ocwen regularly, and in the ordinary course of business, furnishes
information to various consumer reporting agencies regarding Ocwen's transactions with
consumers and is a "furnisher" of information as contemplated by FCRA §168ls-2(a) & (b).

**ANSWER:** In response to paragraph 5 of the Complaint, Experian is without knowledge or

information sufficient to form a belief as to the truth of the allegations contained therein, and

therefore denies the same.

6.      Defendant Trans Union, LLC ("Trans Union") is a business entity that regularly
conducts business in Illinois with its principal place of business at 555 West Adams, Chicago,

Illinois 60661. TransUnion is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer report, as defined in 15 U.S.C. §1681 a(d), to third parties.

**ANSWER:** In response to paragraph 6 of the Complaint, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

7. Defendant Equifax Information Services, LLC ("Equifax") is a business entity that regularly conducts business in Illinois with its principal place of business as 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(F) and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

**ANSWER:** In response to paragraph 7 of the Complaint, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

8. Defendant Experian Information Solutions, Inc. ("Experian") is a business entity that regularly conducts business in Illinois with its principal place of business as 475 Anton Boulevard, Costa Mesa, California 92626. Experian is a "consumer reporting agency", as defined in 15 U.S.C. § 1681a(F), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

**ANSWER:** In response to paragraph 8 of the Complaint, Experian admits that it is a corporation and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), which regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. Experian admits further that it has a principal place of business located in Costa Mesa, California.

## FACTUAL STATEMENT

9.     On or about March 2012, Plaintiff took out a home mortgage from Defendant Ocwen and began making timely payments.

**ANSWER:**  In response to paragraph 9 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

10.     On or about April 2016, Plaintiff lost his job and was unable to meet his monthly payment obligations to Ocwen.

**ANSWER:**  In response to paragraph 10 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

11.     Plaintiff informed Ocwen of his unemployed status and Ocwen allowed Plaintiff to enter into an unemployment forbearance plan in June 2016.  This plan paused Plaintiff's monthly payment requirement until August.   Thereafter, Plaintiff's monthly payment requirements were reduced so that he could afford to make timely payment.

**ANSWER:**  In response to paragraph 11 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

12.     After successfully completing the unemployment forbearance plan in April 2017, Plaintiff was eligible for a trial modification of the mortgage loan known as the Standard Modification.

**ANSWER:**  In response to paragraph 12 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

13.     Plaintiff then entered into a modification agreement with Ocwen on or about April 20, 2017.  Under the modification, Ocwen had set out a new monthly payment plan for Plaintiff.

**ANSWER:**  In response to paragraph 13 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

14.     Plaintiff abided by the terms of the modification agreement in their entirety and made timely monthly payments to Ocwen.

**ANSWER:**  In response to paragraph 14 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

15.     Despite Plaintiff's timely payments of Ocwen's programs, Ocwen began reporting Plaintiff's payments as late.

**ANSWER:**  In response to paragraph 15 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

16.     In 2018, for the first time, Plaintiff discovered that Ocwen had been reporting him as late for a number of months.  Irate, Plaintiff repeatedly contacted Ocwen telling them to correct the errors on his credit report.  Ocwen refused to do so.

**ANSWER:**  In response to Paragraph 16, Experian expressly denies that it reported inaccurate information, failed to correct any inaccurate information, failed to follow reasonable procedures, failed to conduct reasonable reinvestigations, or violated the FCRA or any other law.  Experian does not have knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 16 and on that basis denies the same.

- 5 -

17.     Plaintiff, through counsel, submitted a number of dispute letters between May and July of 2018 with supporting documents to TransUnion, Equifax, and Experian.

**ANSWER:** In response to paragraph 17 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

18.     TransUnion, Equifax, and Experian each forwarded Plaintiff's dispute to Ocwen.

**ANSWER:** In response to paragraph 18 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

19.     Thereafter, Ocwen failed to conduct a reasonable investigation and verified the information reported as accurate.

**ANSWER:** In response to paragraph 19 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the allegations in paragraph 19 of the Complaint that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation of paragraph 19 of the Complaint.

20.     Similarly, Trans Union, Equifax, and Experian failed to reasonably reinvestigate Plaintiff's disputes.

**ANSWER:** In response to paragraph 20 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the allegations in paragraph 20 of the Complaint that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations

and, on that basis, denies, generally and specifically, each and every remaining allegation of paragraph 20 of the Complaint.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE FAIR CREDIT REPORTING ACT**</u>
<u>**by OCWEN**</u>

21.     Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

<u>**ANSWER:**</u>  In response to paragraph 21 of the Complaint, Experian fully restates its answers to paragraphs 1 through 20 as though fully stated herein.

22.     At all times pertinent hereto, Ocwen was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

<u>**ANSWER:**</u>  In response to paragraph 22 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

23.     Ocwen furnished information concerning Plaintiff's account to Experian, Trans Union, and Equifax.

<u>**ANSWER:**</u>  In response to paragraph 23 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

24.     Ocwen willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

<u>**ANSWER:**</u>  Paragraph 24 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information

sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

25.     Additionally, Ocwen willfully and negligently failed to report the trade line as one in dispute.

**ANSWER:** Paragraph 25 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

26.     As a direct and proximate cause of Ocwen's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

**ANSWER:** Paragraph 26 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

27.     Ocwen's conduct, action, and inaction was willful, rendering it liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Ocwen was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**ANSWER:** Paragraph 27 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

WHEREFORE, Plaintiff PRAYS that this Court grant him a judgment against Ocwen for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

**ANSWER:**  In response to this unnumbered paragraph, Experian admits only that Plaintiff has so demanded.  Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  Responding further, Experian denies that Plaintiff is entitled to judgment or any relief against Experian or that Experian is liable to Plaintiff in any manner whatsoever.  As to the allegations that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### BY EQUIFAX

28.    Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

**ANSWER:**  In response to paragraph 28 of the Complaint, Experian fully restates its answers to paragraphs 1 through 27 as though fully stated herein.

29.    Defendant Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

**ANSWER:**  In response to paragraph 29 of the Complaint, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

30.    Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

**ANSWER:** Paragraph 30 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information

sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

31.     Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).  This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Equifax ignored this.

**ANSWER:** Paragraph 31 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

32.     Equifax negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i.  If Equifax conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

**ANSWER:** Paragraph 32 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

33.     Equifax also negligently and willfully failed to mark the item as in dispute.

**ANSWER:** Paragraph 33 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

34.     As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

**ANSWER:** Paragraph 34 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

35.     Equifax's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**ANSWER:** Paragraph 35 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

WHEREFORE, PLAINTIFF PRAYS that this Court grant plaintiff a judgment against Equifax for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

**ANSWER:** In response to this unnumbered paragraph, Experian admits only that Plaintiff has so demanded.  Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  Responding further, Experian denies that Plaintiff is entitled to judgment or any relief against Experian or that Experian is liable to Plaintiff in any manner whatsoever.  As to the allegations that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY TRANS UNION

36.    Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

**ANSWER:**  In response to paragraph 36 of the Complaint, Experian fully restates its answers to

paragraphs 1 through 35 as though fully stated herein.

37.    Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

**ANSWER:**  In response to paragraph 37 of the Complaint, Experian does not have knowledge or

information sufficient to form a belief as to the truth of those allegations and, on that basis,

denies, generally and specifically, each and every allegation contained therein.

38.    Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

**ANSWER:**  Paragraph 38 of the Complaint states a legal conclusion to which no response is

required. To the extent a response is required, Experian does not have knowledge or information

sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally

and specifically, each and every allegation contained therein.

39.    Trans Union negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).  This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Trans Union ignored this.

**ANSWER:**  Paragraph 39 of the Complaint states a legal conclusion to which no response is

required. To the extent a response is required, Experian does not have knowledge or information

sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

40.    Trans Union negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i.  If Trans Union conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

**ANSWER:** Paragraph 40 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

41.    Trans Union also negligently and willfully failed to mark the item as in dispute.

**ANSWER:** Paragraph 41 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

42.    As a direct and proximate cause of Trans Union's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

**ANSWER:** Paragraph 42 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

43.    Trans Union's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Trans Union was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**ANSWER:** Paragraph 43 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

WHEREFORE, PLAINTIFF PRAYS that this Court grant Plaintiff a judgment against Trans Union for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

**ANSWER:** In response to this unnumbered paragraph, Experian admits only that Plaintiff has so demanded. Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. Responding further, Experian denies that Plaintiff is entitled to judgment or any relief against Experian or that Experian is liable to Plaintiff in any manner whatsoever. As to the allegations that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

## COUNT IV

## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY EXPERIAN

44. Plaintiff repeats the allegations contained in Paragraphs 1 through 20 and incorporates them as if specifically set forth at length herein.

**ANSWER:** In response to paragraph 44 of the Complaint, Experian fully restates its answers to paragraphs 1 through 43 as though fully stated herein.

45. Defendant Experian prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

- 14 -

**ANSWER:** Paragraph 45 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

46.     Said reports contained information about Plaintiff that are false, misleading, and inaccurate.

**ANSWER:** In response to paragraph 46 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

47.     Experian negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 168le(b).  This is evidenced by the fact that Plaintiff submitted evidence substantiating his dispute basis but Experian ignored this.

**ANSWER:** In response to paragraph 47 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

48.     Experian negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i.  If Experian conducted a reasonable investigation, it would not have allowed Ocwen continue to report erroneously.

**ANSWER:** In response to paragraph 48 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

49.     Experian also negligently and willfully failed to mark the item as in dispute.

**ANSWER:** In response to paragraph 49 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

50.     As a direct and proximate cause of Experian's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

**ANSWER:** In response to paragraph 50 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

51.    Experian's conduct, action, and inaction was willful, rendering each liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**ANSWER:** In response to paragraph 51 of the Complaint, Experian denies, generally and specifically, each and every allegation contained therein.

WHEREFORE, PLAINTIFF PRAYS that this Court grant Plaintiff a judgment against Experian for the greater of statutory or actual damages plus punitive damages along with costs, interest, and attorney's fees.

**ANSWER:** In response to this unnumbered paragraph, Experian admits only that Plaintiff has so demanded.  Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  Responding further, Experian denies that Plaintiff is entitled to judgment or any relief against Experian or that Experian is liable to Plaintiff in any manner whatsoever.  As to the allegations that relate to the other defendants, Experian does not have knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

### JURY TRIAL DEMAND

Experian admits that Plaintiff has demanded a jury trial on all issues so triable.

\*      \*      \*      \*

### EXPERIAN'S AFFIRMATIVE DEFENSES

By asserting the defenses set forth below, Experian does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these defenses.  Nor does Experian admit that Plaintiff is relieved of his burden to prove each and every element of his

- 16 -

claims and the damages, if any, to which he is entitled.  As for its affirmative defenses, Experian reasserts and reincorporates as if fully set forth herein its responses above to paragraphs 1 through 51 of the Complaint, and to the unnumbered paragraphs contained therein.  Experian reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual development of this case.

**FIRST AFFIRMATIVE DEFENSE**
**(FAILURE TO STATE A CLAIM)**

The Complaint herein, and each cause of action thereof, fails to set forth facts sufficient to state a claim upon which relief may be granted against Experian and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Experian.

**SECOND AFFIRMATIVE DEFENSE**
**(TRUTH/ACCURACY OF INFORMATION)**

All claims against Experian are barred because all of the information Experian communicated to any third person regarding Plaintiff was true.

**THIRD AFFIRMATIVE DEFENSE**
**(INDEMNIFICATION)**

Experian is informed and believes and thereon alleges that any purported damages allegedly suffered by Plaintiff are the results of the acts or omissions of third persons over whom Experian had neither control nor responsibility.

**FOURTH AFFIRMATIVE DEFENSE**
**(FAILURE TO MITIGATE DAMAGES)**

Plaintiff has failed to mitigate his damages.

**FIFTH AFFIRMATIVE DEFENSE**
**(LACHES)**

The Complaint and each claim for relief therein are barred by laches.

### SIXTH AFFIRMATIVE DEFENSE
### (CONTRIBUTORY/COMPARATIVE FAULT)

Experian is informed and believes and thereon alleges that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff himself and/or third parties and resulted from Plaintiff's or third parties' own negligence which equaled or exceeded any alleged negligence or wrongdoing by Experian.

### SEVENTH AFFIRMATIVE DEFENSE
### (ESTOPPEL)

Any damages which Plaintiff may have suffered, which Experian continues to deny, were the direct and proximate result of the conduct of Plaintiff.  Therefore, Plaintiff is estopped and barred from recovery of any damages.

### EIGHTH AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

All claims for relief in the Complaint herein are barred by the applicable statutes of limitation, including but not limited to 15 U.S.C. § 1681p.

### NINTH AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

The Complaint, and each claim for relief therein that seeks equitable relief, is barred by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE
### (REASONABLE PROCEDURES)

At all times relevant to the Complaint, Experian followed reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports.

### ELEVENTH DEFENSE
### (INTERVENING CAUSES)

Plaintiff's alleged injuries were not caused by Experian, but by independent intervening causes which had no relation in fact to any conduct of Experian.

### TWELFTH AFFIRMATIVE DEFENSE
### (CONSTITUTIONALITY OF PUNITIVE DAMAGES)

Plaintiff's claims for punitive damages are barred (a) by the Eighth Amendment of the United States Constitution, (b) by the Fifth and Fourteenth Amendments of the United States Constitution prohibiting substantive and procedural due process violations, (c) by the Fourteenth Amendment of the United States Constitution prohibiting equal protection violations, and (d) to the extent such sanctions are attempted to be imposed without requiring the burden of proof to be beyond a reasonable doubt and also in accordance with the protections of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution. Experian adopts by reference the defense, criteria, limitation, standard and constitutional protections mandated or provided by the United States Supreme Court in the following cases: *BMW v. Gore*, 517 U.S. 559 (1996); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 923 (2001); *State Farm v. Campbell*, 538 U.S. 408 (2003); and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007).

### THIRTEENTH AFFIRMATIVE DEFENSE
### (IMMUNITY)

All claims against Experian are barred by the qualified immunity of 15 U.S.C. § 1681h(e).

### FOURTEENTH AFFIRMATIVE DEFENSE
### (RIGHT TO ASSERT ADDITIONAL DEFENSES)

Experian reserves the right to assert additional, different, or modified affirmative defenses at such time and to such extent as warranted by discovery and the factual development of this case.

### PRAYER FOR RELIEF

WHEREFORE, Defendant Experian Information Solutions, Inc. prays as follows:

That Plaintiff take nothing by virtue of the Complaint herein and that this action be

    dismissed in its entirety;

For costs of suit and fees herein incurred; and

For such other and further relief as the Court may deem just and proper.


Dated: March 25, 2019                Respectfully submitted,


                s/ Jamie N. Ward
                Jamie N. Ward
                jamieward@jonesday.com
                JONES DAY
                77 West Wacker
                Chicago, IL  60601.1692
                Telephone:   +1.312.782.3939
                Facsimile:   +1.312.782.8585

                *Counsel for Defendant Experian Information*
                *Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, I caused a copy of the foregoing to be electronically filed with the Clerk of the U.S. District Court for the Northern District of Illinois through the CM/ECF system, which will electronically send notice to all counsel of record.

*s/ Jamie N. Ward*
Attorney for Defendant
Experian Information Solutions, Inc.

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. CHAITOFF | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 7259 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC.. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Jeffrey Chaitoff brings this lawsuit against Defendant Experian Information Solutions, Inc., claiming that Experian violated the Fair Credit Reporting Act ("FCRA") by inaccurately reporting his Ocwen Loan Servicing, LLC ("Ocwen") home mortgage as past due during a three-month trial period that preceded a permanent home loan modification agreement. Defendant Experian now moves for summary judgment, arguing there is no issue of material fact as to the following issues: (1) Plaintiff cannot establish the existence of an actionable inaccuracy; (2) Experian's reinvestigation of Plaintiff's dispute was presumptively reasonable; and (3) Plaintiff has no damages resulting from Experian's reporting of his Ocwen mortgage delinquencies during the trial period. Experian argues that because Plaintiff cannot show these facts, there can be no liability under the FCRA. Because there is no dispute of material facts as to the existence of an actionable inaccuracy and as to whether Experian's procedures for reinvestigating Plaintiff's dispute were reasonable, Defendant's Motion for Summary Judgment (Dkt.70) is granted.

**BACKGROUND**

The below facts come from Defendant's Rule 56.1 Statement of Facts. (Dkt. 72). Plaintiff is a resident of Florida and is a consumer under the FCRA and Defendant Experian is a consumer reporting agency under the FCRA. (Dkt 72 ¶¶ 1–2). Experian maintains credit information about Plaintiff. (*Id.* ¶ 3).

**I.      Plaintiff's Mortgage**

In approximately 1995, Plaintiff purchased a residential property located at 309 Lincoln Ave., Highland Park, New Jersey (the "Highland Park Property") where he lived until September 2016. (*Id.* ¶ 6). Plaintiff refinanced his home in 2012, obtaining a $329,627 mortgage through Ocwen Loan Servicing, LLC. (*Id.*). His monthly payment under his mortgage was $2,950. (*Id.*)

Plaintiff lost his job in human resources in early 2016 and became unable to make his mortgage payments on the Highland Park property. (*Id.* ¶ 7). Plaintiff became late on his payments in early 2016, although he testified he did not remember specifically when he became late on payments. (*Id*). Ocwen reported that Plaintiff was intermittently thirty-days late in his payments from February 2015 through May 2016, with more serious delinquencies starting in June 2016. (*Id.* ¶ 8). By October 2016, Plaintiff was six months late on his mortgage payments, and remained at least six months late until August 2017. (*Id.*).

Plaintiff called Ocwen to inquire about his options for paying the mortgage, and agreed to enter into an unemployment forbearance program, in which he made reduced payments of $570.92 from August 2016 through January 2017 in order to avoid foreclosure. (*Id.* ¶ 9). In April 2017, Plaintiff received a Trial Period Plan Notice from Ocwen, notifying Plaintiff that he was approved to enter into a Trial Period Plan for a standard loan modification. (*Id.* ¶ 10). The Notice stated that Plaintiff had been:

> [A]pproved to enter into a trial period plan under the Standard Modification. Please read this letter so that you understand the next steps that are necessary for you to complete your modification.  In order to be considered for a modification you must first complete a trial period…Based on a careful review of the information you provided, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms.  It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to permanently modify your mortgage.

(*Id.*).  The Trial Period Plan required that Plaintiff make trial payments of $2,661.20 in May, June, and July 2017 in order to permanently modify his mortgage and indicated that "Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.  (*Id.* ¶ 11).  The Trial Period Plan Notice stated further:

> [E]xcept for your monthly mortgage payment amount during the trial period, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the trial period. . . .Your current loan documents remain in effect; however, you may make the Trial Period Plan payment instead of the payment required under your loan documents: - You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

(*Id.* ¶ 12).  Finally, the Trial Period Plan included the following provision regarding the manner in which Ocwen would report the delinquent payments on Plaintiff's account:

> Credit Reporting: We will continue to report the delinquency status of your loan to credit reporting agencies as well as your entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK.  AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF

> YOU ARE IS [sic] CURRENT ON YOUR MORTGAGE OR OTHERWISE
> HAVE A GOOD CREDIT SCORE.  For more information about your credit
> score, go to ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm

(*Id.* ¶ 13).

At the time Plaintiff received the Trial Period Plan Notice in April 2017 and made his first Trial Period Plan payment in May 2017, he was more than six months delinquent in making payments to Ocwen pursuant to the terms of his mortgage agreement.  (*Id.* ¶ 14).  Plaintiff successfully made the Trial Period Plan payments of $2661.20 in each of May, June, and July 2017.  (*Id.* ¶ 15).  Following Plaintiff's successful completion of the Trial Period Plan, the modification of Plaintiff's Ocwen loan was implemented effective August 1, 2017.  (*Id.* ¶ 16).

Starting in August 2017, Ocwen reported Plaintiff's account as being timely paid with no delinquencies from August 2017 forward.  (*Id.*).  On or around April 24, 2018, Plaintiff contacted Ocwen via telephone to express concerns relating to the credit reporting of his Ocwen loan during the time he was completing his unemployment forbearance plan and trial modification.  (*Id.* ¶ 17).  Ocwen's Office of the Consumer Ombudsman responded via letter on May 1, 2018, confirming the accuracy of its credit reporting.  (*Id.*).  Plaintiff obtained a mortgage and purchased a home in Orlando, Florida, in September 2019.  (*Id.* ¶ 18).

**II.    Plaintiff's Credit File and Disputes**

On May 21, 2018, Experian received a dispute letter from Plaintiff dated May 14, 2018.  (*Id.* ¶ 29).  Plaintiff's dispute letter related to his home mortgage account with Ocwen, and stated that he had "made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely."  (*Id.*).  Attached to this dispute were documents purporting to be from Ocwen regarding trial payments made pursuant to a Trial Period

Plan preceding a potential loan modification.  (*Id.*).  On May 28, 2018, Experian processed Plaintiff's dispute.  (*Id.* ¶ 30).

Because Plaintiff was disputing delinquent payment history for which he had produced no proof of payment, the agent handling Plaintiff's dispute sent an Automated Consumer Dispute Verification ("ACDV") to Ocwen that day, which attached all documents submitted by Plaintiff as part of his dispute, and requested that Ocwen verify the account status and history.  (*Id.*).  Ocwen responded on May 29, 2018, indicating that Plaintiff had delinquent payment history.  (*Id.* ¶ 31). With regard to Plaintiff's payment history, Ocwen's reporting indicates that Plaintiff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017.  (*Id.*). Experian updated Plaintiff's Ocwen account in accordance with Ocwen's ACDV response on May 30, 2018.  (*Id.* ¶ 32).

On May 30, 2018 Experian sent Plaintiff an updated consumer disclosure detailing the results of its reinvestigation.  (*Id.* ¶ 33).  The dispute results sent to Plaintiff included the following paragraph, "[w]e reviewed the documentation you provided with your dispute, but determined that it was not sufficient to make the changes or deletions you requested.  We then forwarded your documentation to the furnisher of the information, along with a description of your dispute, and asked them to investigate your dispute.  If the item you disputed was a public record, we contacted the vendor who collected the information from a public record source and asked them to verify the public record information.  The results of our reinvestigation are included here."  (*Id.*).

On July 5, 2018, Experian received a second dispute letter from Plaintiff, dated July 2, 2018. (*Id.* ¶ 34).  Plaintiff's dispute letter related to his home mortgage account with Ocwen and stated that he had "made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely."  (*Id.*).  Attached to this dispute

were documents purporting to be from Ocwen regarding trial payments pursuant to a Trial Period Plan preceding a potential loan modification. (*Id.*).

On July 11, 2018, Experian processed Plaintiff's dispute. (*Id.* ¶ 35). Because Plaintiff was disputing delinquent payment history for which he had produced no proof of payment, the agent handling Plaintiff's dispute sent an ACDV to Ocwen that day. (*Id.*). The ACDV attached all documents submitted by Plaintiff as part of his dispute and requested that Ocwen verify all information reporting on Plaintiff's account. (*Id.*).

Ocwen responded on July 15, 2018. (*Id.* ¶ 36). Ocwen's reporting indicates that Plaintiff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017. (*Id.*). Experian updated Plaintiff's Ocwen account in accordance with Ocwen's ACDV response on July 16, 2018. (*Id.* ¶ 37). Experian sent Plaintiff an updated consumer disclosure detailing the results of its reinvestigation the same day. (*Id.*). Experian did not receive any other correspondence from Plaintiff following his July 2018 dispute letter, until the filing of this lawsuit. (*Id.* ¶ 38). The Ocwen account was deleted from Plaintiff's credit file at the request of Ocwen on January 17, 2019. (*Id.* ¶ 39).

**III.     Experian's Procedures**

Experian, which is a "consumer reporting agency" as defined by the FCRA, gathers information and data regarding consumers from various vetted and contracted sources, which it uses to create consumer files on more than an estimated 280 million consumers in the United States. (*Id.* ¶ 19). Experian's procedures for assuring the maximum possible accuracy of reported credit include working with data furnishers to ensure that they supply the most complete and accurate data possible, subjecting all incoming data to numerous systems and checks designed to prevent errors, continually reviewing and refining Experian's computer systems in an ongoing

effort to assure the maximum possible accuracy of information in Experian reports, and working with consumers to proactively prevent errors in consumer credit reports.  (*Id.* ¶ 20).  Before permitting information received from one of its vetted and contracted data furnishers to enter its credit reporting database, Experian validates and assesses the accuracy of the data using rigorous quality control and statutory compliance procedures to ensure only accurate information is added to a consumer's file.  (*Id.* ¶ 21).

Experian's procedures include assuring the reliability of the data furnisher before it will accept their data into Experian's credit reporting database.  (*Id.* ¶ 22).  Experian only accepts credit information from data furnishers that have been vetted through Experian's stringent membership process, which entails multiple steps, including but not limited to, on-site physical inspections of the furnisher's facilities, audits of the furnisher's credit data, background and business conflict checks, and security checks.  (*Id.*).  Before data furnishers are permitted to supply information to Experian, the furnishers must complete the on boarding process, and must execute contracts and data agreements agreeing to comply with the obligations imposed by the FCRA to furnish accurate information and follow industry reporting standards in the "Metro 2" Format, an industry-wide reporting format that standardizes the computer layout for credit reporting to ensure the integrity and consistency of the data.  (*Id.*).

Consumers who disagree with the accuracy of any items of credit information appearing in their file disclosure (or in a consumer credit report provided to a credit grantor) may submit disputes of those items to Experian through one of three ways – consumers may send disputes to Experian by U.S. mail, consumers may call Experian at a toll-free number to dispute, or consumers may use Experian's online system, either directly, or indirectly through a reseller.  (*Id.* ¶ 24).  Upon receiving notice of a dispute from a consumer, Experian initiates its "reinvestigation" process,

wherein Experian reviews all relevant information provided by the consumer and uses it, if possible, to verify the identity of the consumer, to identify the item(s) being disputed, and to determine the nature of any alleged inaccuracies. (*Id.* ¶ 25). In many disputes, the nature of the dispute is such that Experian must contact the furnisher and ask them to verify the accuracy of the disputed information. (*Id.*).

When Experian externally disputes an item, requesting that the data furnisher verify the information, Experian will send an Automated Consumer Dispute Verification ("ACDV"). (*Id.* ¶ 26). The ACDV identifies the consumer and the account information currently being reported, identifies the basis for the dispute, and asks the data furnisher to verify or update the reported information, and any documents and information submitted by the consumer as part of their dispute will generally be attached to the ACDV that Experian sends to the data furnisher. (*Id.*). The data furnisher then returns the ACDV to Experian, instructing Experian to either leave the item as it is, to delete the item, or to change or update it in some specified manner. (*Id.*). Furnishers are required to review the ACDV and either verify or update the disputed reporting. (*Id.* ¶ 27). When the furnisher responds to the ACDV, they specifically represent that they have verified the accuracy of the information contained in the response. (*Id.*). Once this process is complete, Experian sends the consumer dispute results summarizing the results of the reinvestigation. (*Id*).

Experian used all of the aforementioned procedures and quality checks and controls designed to ensure the accuracy of its credit reporting activities when dealing with Plaintiff. (*Id.* ¶ 28). Experian had no reason to doubt the accuracy of information provided by Ocwen during the time period relevant to this action because Experian subjected Ocwen to all of Experian's quality control measures explained above, including putting Ocwen through Experian's stringent vetting process and requiring Ocwen to execute contracts agreeing to comply with its obligation under the FCRA

to furnish accurate data. (*Id.*). There is no indication in Experian's records that Ocwen was a prevalent source of unreliable information. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## DISCUSSION

As a threshold matter, the FCRA requires a plaintiff to show that a consumer reporting agency prepared a report containing inaccurate information, stating that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see also Denan v. Trans Union, LLC*, 959 F.3d 290, 293–94 (7th

Cir. 2020) (discussing how a consumer reporting agency cannot be held liable under the FCRA if it did not report inaccurate information); *Walton v. BMO Harris Bank N.A*., 761 F. App'x 589, 591 (7th Cir. 2019) (holding same); *Sarver v. Experian Info. Sols*., 390 F.3d 969, 971 (7th Cir. 2004) ("[T]o state a claim under [§ 1681e(b)], a consumer must sufficiently allege that a credit reporting agency prepared a report containing inaccurate information." (internal citations and quotation marks omitted)). Section 1681e(b) does not explain what it means to be "inaccurate," nor does it draw a line between factual and legal "accuracy." *Denan*, 959 F.3d at 294. Yet, the FCRA does not require unfailing accuracy from consumer reporting agencies, instead requiring a consumer reporting agency to follow "reasonable procedures to assure maximum possible accuracy" when it prepares a credit report. *Id.*

Defendant argues that it cannot be held liable under the FCRA because: (1) Plaintiff cannot establish the existence of an actionable inaccuracy; (2) Experian's reinvestigation of Plaintiff's dispute was reasonable; and (3) Plaintiff has no damages resulting from Experian's reporting of his Ocwen mortgage delinquencies during the trial period. The Court need only look to these first two issues because there is no issue of material fact about whether the information Experian reported was accurate and whether its reinvestigation was reasonable.

## I.    The Accuracy of Plaintiff's Information

Plaintiff maintains that the information Defendant reported was inaccurate because despite Plaintiff entering into a TPP and making the payments instructed, Experian reported Chaitoff as being delinquent during each of May, June, and July without any mention that Chaitoff had entered into a TPP and timely paid the modified payment amount. However, there is no dispute as to the accuracy that Chaitoff was delinquent on his payments when he began his TPP and he was, in fact, delinquent during the three-month period. (Dkt. 72 ¶¶ 7–8, 17). The TPP Notice that Plaintiff

received and agreed to in April 2017 stated that, "[i]n order to be considered for a modification you must first complete a trial period…This is the first step toward qualifying for more affordable mortgage payments or more manageable terms." (*Id.* ¶ 10). The Notice stated that Plaintiff's mortgage would only be permanently modified after he had "successfully made each of the payments" in May, June, and July 2017. (*Id.* ¶ 11). The Notice further advised Plaintiff that "[y]our current loan documents remain in effect; however, you may make the Trial Period Plan payment instead of the payment required under your loan document" and that Ocwen would "continue to report the delinquency status of [Plaintiff's] loan to credit reporting agencies." (*Id.* ¶¶ 12–13).

Plaintiff does not dispute that the Notice advised him of these facts, nor does he dispute that he was delinquent during these trial months. (*See* Dkt. 77). Essentially Plaintiff's dispute is not over whether Defendant reported inaccurate information, his dispute lies with Ocwen about their reporting to Experian of his loan modification. Plaintiff's claim, then, is about the legal accuracy of his loan modification, but not the factual accuracy. Plaintiff cites a litany of out-of-circuit cases that he claims bolster his argument. However, the Seventh Circuit has clarified recently that the FCRA imposes credit reporting agencies to adopt "'reasonable procedures' to ensure accuracy," but it does not require them to evaluate "non-adjudicated legal defenses to [consumers'] debts." *Denan*, 959 F.3d at 295. Additionally, while § 1681i(a) "requires consumer reporting agencies to 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate,'" they are "neither qualified nor obligated to resolve legal issues," but the FCRA's implementing regulations require only furnishers, not reporting agencies, to ensure that debt information "correctly [r]eflects … liability for the account." *Id.* at 295 (citation omitted). Plaintiff does not dispute the accuracy of the information, only that the information Ocwen

reported to Experian was legally inaccurate because his loan was modified by the TPP. However, the liability for this does not lie with the consumer reporting agency. *See Walton*, 761 F. App'x at 591 (Finding that credit reporting agency not liable under FCRA where only reporting accurate information received from bank about loan payment delinquency).

Plaintiff cites to a Sixth Circuit case he claims is on point, *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018). However, even if this case were binding precedent, it would still not apply to the facts in this case. Namely, in *Pittman*, the Sixth Circuit held iServe, the loan servicer which granted the plaintiff a TPP, and BSI, the company that was assigned the loan, liable under the FCRA for reporting the plaintiff's mortgage payments as past due despite the loan modification. Nothing in the case could be construed to hold a consumer reporting agency liable for reporting accurate information regarding the TPP that it received from the loan servicer.

Plaintiff claims that "Experian's reporting is also inaccurate because Experian failed to report Chaitoff's dispute as required by the FCRA. Despite receiving two disputes from Chaitoff, Experian chose to conceal this information within its reports rather than comply with its obligation to publish the in-dispute notation under 15 USC § 1681i(c)." (Dkt. 76 at 7–8). Plaintiff provides zero factual support for this assertion, and in fact, Defendant's supplied facts rebut this. (Dkt. 72 ¶¶ 33, 37).

Because there is no issue of material fact pertaining to whether Experian reported accurate information, Experian's Motion for Summary Judgment is granted.

## II.    The Reasonableness of Procedures

Experian argues that even if it had reported inaccurate information, the Court should still grant summary judgment because the procedures Experian used to reinvestigate Plaintiff's dispute were reasonable. When a consumer disputes the "accuracy of any item of information" contained

in a credit report, § 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."  15 U.S.C. § 1681i(a)(1)(A).  As with a § 1681e(b) claim, "a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher, which stands in a far better position to make a thorough investigation of a disputed debt than the [consumer reporting agency] does on reinvestigation."  *Denan*, 959 F.3d at 296 (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)).  A credit reporting agency is not liable under the FCRA if it followed "reasonable procedures to assure maximum possible accuracy," but nonetheless reported inaccurate information in the consumer's credit report.  *Sarver*, 390 F.3d at 971–72 (citing *Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir. 1994)).  The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.  *Id.* at 971 (citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 663 (7th Cir. 2001).  Yet, the FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures."  *Id.* at 972 (citation omitted).

    In *Sarver*, the Court stated that Experian, relying on an affidavit from a compliance manager, provided an accounting of its procedures that detailed the safeguards in place to ensure accuracy.  *Id.*  Here, Experian has provided an affidavit from Cymone Rogers, a Senior Legal and Compliance Specialist discussing the extensive procedures in place to safeguard accuracy.[1]  There

---

[1] Rogers's affidavit states "My job responsibilities have included processing, analyzing, and responding to consumer disputes. Based upon my experience with Experian, I am familiar with Experian's policies and procedures for the compilation, retention, reinvestigation, and disclosure of consumer credit information, as well as Experian's computer systems used in doing so. I am also familiar with the records maintained by Experian in the course of conducting its business activities, including without limitation, Plaintiff's Experian consumer file."  (Dkt. 72-3 ¶ 2).

is no genuine dispute that Experian relied on sources it reasonably believed to be reputable, nor is there even an allegation that Experian had any notice of systematic problems with its procedures. (Dkt. 72 ¶¶ 20–23, 28.)

Plaintiff does not dispute the factual accuracy of the recitation of Experian's procedures, but instead claims that Experian cannot rely upon the affidavit supplied by its Senior Legal and Compliance Specialist because it does not comport with Fed. R. Civ. P. 56(c)(4) because the statements are "self-serving and based on speculation, conjecture, and inadmissible hearsay." (Dkt. 77 at 6–14). Plaintiff seeks to require Experian to include additional documents to support the Rogers's affidavit. However, there is no requirement for Defendant to cite to other portions of the record to support its Compliance Specialist's declaration when her statement is directly based on her own personal knowledge. Fed. R. Civ. P. 56(c)(4); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 869 (N.D. Ill. 2010).

Plaintiff claims that the affidavit is "conclusory" and therefore improper. (Dkt. 77 at 7–11, citing *RB&W Mfg. LLC v. Buford*, 263 F. App'x 486, 490 (7th Cir. 2008)). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). However, the Rogers's affidavit is a thorough accounting of Experian's procedures based on her own personal knowledge gained through years of work as a Compliance Specialist. It is unclear how the affidavit is "conclusory" because Plaintiff does not explain his argument. Just as the compliance manager's affidavit in *Sarver* was sufficient to set out Experian's procedures, the Compliance Specialist's affidavit here is sufficient.

Aside from Plaintiff's arguments that the affidavit was otherwise improper, Plaintiff does not dispute that the procedures Experian used are otherwise reliable. Indeed, the procedures described by Experian here are similar to those described in *Sarver*. Yet Plaintiff claims that Experian was "on notice" that the information that it was receiving from Ocwen was inaccurate because Plaintiff had reported issues twice, and that therefore Experian's procedures were unreasonable. However, the law is clear that the FCRA is not a strict liability statute and Experian was not on notice until Plaintiff contacted Experian about a potential error. *Walton*, 761 F. App'x at 592; *Sarver*, 390 F.3d at 971 ("As we have made clear, the FCRA is not a strict liability statute."). The FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures." *Sarver*, 390 F.3d at 972. While Experian was put on notice of a potential error when Plaintiff contacted Experian, Experian took reasonable action afterwards to ensure the information it was receiving from Ocwen was accurate. Plaintiff does not present any additional facts that Experian's procedures for reinvestigating Plaintiff's claim were unreasonable.

## CONCLUSION

There is no dispute of material facts as to the existence of an actionable inaccuracy and whether Experian used reasonable procedures for reinvestigating Plaintiff's dispute. Therefore, Defendant's Motion for Summary Judgment (Dkt.70) is granted.

Virginia M. Kendall
United States District Judge

Date: May 12, 2021

15

ILND 450 (Rev. 10/13) Judgment in a Civil Action

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. CHAITOFF | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 7259 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC.. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>JUDGMENT IN A CIVIL CASE</u>

Judgment is hereby entered (check appropriate box):

☐    in favor of Plaintiff (s)
which ☐ includes    pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒    in favor of defendant(s) EXPERIAN INFORMATION SOLUTIONS, INC.

and against plaintiff(s) JEFFREY A. CHAITOFF

Defendant(s) shall recover costs from plaintiff(s).

---

☐    other:

---

This action was *(check one)*:

☐ tried by a jury with Judge Virginia M. Kendall presiding, and the jury has rendered a verdict.
☐ tried by Judge Virginia M. Kendall without a jury and the above decision was reached.
☒ decided by Judge Virginia M. Kendall on a Motion for Summary Judgment.

Date:  5/12/2021                     Thomas G. Bruton, Clerk of Court

                                     /s/Lynn Kandziora , Deputy Clerk

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY A. CHAITOFF | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 7259 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Jeffrey A. Chaitoff's Motion for Reconsideration of this Court's Memorandum Opinion and Order granting Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment. (Dkt. 86). Plaintiff argues that this Court committed clear error because the Court misconstrued Chaitoff's arguments leading the Court to erroneously conclude that a credit report with no mention of a Trial Period Plan ("TPP") and that the Court erred because Chaitoff's dispute is neither incomplete nor inaccurate. Chaitoff also argues the Court erred in finding Experian's procedures "reasonable" as a matter of law. Because the Plaintiff has already put forth these arguments and the Court rejected them in granting the Motion for Summary Judgment, Plaintiff's Motion for Reconsideration [Dkt. 88] is denied.

Plaintiff does not state under which Federal Rule of Civil Procedure he moves for reconsideration but it is likely he is moving for reconsideration under Fed. R. Civ. P. 59(e). Rule 59(e) "allows district courts to take a second look at their decisions ... only within narrow bounds." *See, e.g.*, *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, No. 17 C 2153, 2018 WL 4679559, at *3 (N.D. Ill. Sept. 28, 2018). For relief under Rule 59(e), the movant must "clearly establish[ ]: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *see also Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011); *see also Silha v. ACT, Inc.*, 2014 WL 11370441, at *1 (N.D. Ill. Dec. 15, 2014) ("Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or consider newly discovered material evidence.") (citation omitted).

Rule 59(e) motions "are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (citation omitted). They are also "not to be used to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). The decision whether to grant Rule 59(e) motions is entrusted to the sound discretion of the district court. *Miller*, 683 F.3d at 813.

Plaintiff's Motion for Reconsideration makes clear that the Court did not err; Plaintiff merely disagrees with the outcome.  Plaintiff repeatedly cites to this Court's reasoning but then claims this is inaccurate for reasons he has already argued in his Response brief.  For example, as to Plaintiff's first point of contention, that omitting TPP Information is materially misleading, Plaintiff claims the Court applied the wrong standard but then cites case law he had already cited in his briefing on the motion for summary judgment.  The Court already analyzed the holding in *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 639 (6th Cir. 2018), as Plaintiff acknowledges, and found it did not apply to the facts before it.  (Dkt. 86 at 12).  The fact that Plaintiff does not agree does not constitute the basis for a proper motion for reconsideration.

The remainder of Plaintiff's arguments also focus on rehashing arguments the Court had previously denied.  The Court in its Opinion, examining the binding case law and the facts before it, found that Experian's procedures were reasonable.  (*Id.* at 12–14).  Plaintiff does not present any new case law or fact that would change this Court's reasoning.  The Court need not tarry over Plaintiff's arguments; Plaintiff merely wishes to relitigate the Court's Opinion but the Court's earlier reasoning stands.  Motions for reconsideration "are not appropriate vehicles" for generally "arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration."  *Anderson v. Holy See*, 934 F.Supp.2d 954, 957 (N.D. Ill. 2013), *aff'd sub nom. Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014).

The fact that Plaintiff disagrees with this Court's ruling is unsurprising.  But since he does not show the Court made a manifest error of law or fact or bring forth newly discovered evidence, Plaintiff's Motion for Reconsideration [Dkt. 88] is denied.

.

_____
Virginia M.  Kendall
United States District Judge

Date: August 17, 2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY A. CHAITOFF, | ) Case No.: 1:18-cv-07259 |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **NOTICE OF APPEAL** |
| | ) |
| TRANS UNION, LLC; OCWEN LOAN | ) |
| SERVICING, LLC; EQUIFAX | ) |
| INFORMATION SERVICES, LLC; | ) |
| EXPERIAN INFORMATION SOLUTIONS, | ) |
| INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

PLEASE TAKE NOTICE that Jeffrey A. Chaitoff, the plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Order granting Defendant's Motion for Summary Judgment, entered on May 12, 2021 [ECF 86] and finalized with the Court's Order denying Plaintiff's Motion for Reconsideration, entered on August 17, 2021. [ECF 96].[1]

Dated: September 3, 2021.

Respectfully submitted,

/s/ Daniel Zemel
Daniel Zemel, Esq.
Elizabeth Apostola, Esq.
ZEMEL LAW LLC

---

[1] "For purposes of Rule 4(a) of the Federal Rules of Appellate Procedure, we view a motion characterized only as a motion for reconsideration as the 'functional equivalent' of a Rule 59(e) motion to alter or amend a judgment." *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) (*citing Venen v. Sweet*, 758 F.2d 117, 112 (3d Cir. 1985)). The Court itself treated the motion as one under Rule 59(e). A timely filed Rule 59(e) motion "suspends the time for taking an appeal. Once the Rule 59(e) motion has been ruled on, the thirty-day appeal clock begins to run." *Andrews v. E.I. du Pont de Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006) (internal citations omitted); Fed. R. App. P. 4(a)(4)(A)(iv); *see also Martinez v. City of Chicago*, 499 F.3d 721, 725 (7th Cir. 2007).

660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
DZ@zemellawllc.com
EA@zemelllawllc.com
Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3d day of September, 2021 a true and correct copy of the

foregoing document was sent to all counsel of record via the Court's ECF system.


<u>s/ Daniel Zemel</u>
Daniel Zemel, Esq.